897 So.2d 337 (2005)
Frieda Dianne HORWITZ
v.
Allan Arnold HORWITZ.
2030012.
Court of Civil Appeals of Alabama.
September 10, 2004.
*338 Lisa E. Boone and Raymond L. Jackson, Jr., of Jackson & Boone, P.C., Auburn, for appellant.
Thomas S. Melton of Haygood, Cleveland, Pierce, Mattson & Thompson, LLP, Auburn, for appellee.
YATES, Presiding Judge.
This is the second time these parties have been before this court. See Horwitz v. Horwitz, 739 So.2d 1118 (Ala.Civ.App.1999). The parties have three children, a son and two daughters. The Macon Circuit Court divorced the parties in 1998, awarding custody of the parties' minor son to the mother, and ordering the father to pay $600 per month in child support and postminority educational support for the parties' younger daughter. The mother was awarded the marital home, and the father was ordered to pay the mortgage payments on the marital home for one year. The court found that the mother's interest in the parties' optical business was $250,000, and it ordered the father to pay the mother that amount at a rate of $1,500 per month, with 8% interest per annum on the debt. The court reserved the right to award periodic alimony. Both parties appealed.[1] The mother argued that the trial court had erred in calculating the father's child-support obligation and in not awarding support for the parties' then 19-year-old *339 daughter because she had been diagnosed with Crohn's disease during the divorce proceedings. She also argued that the trial court had erred in its division of property and in not awarding her spousal support.
This court reversed the Macon Circuit Court's child-support award and remanded the case for the trial court to determine the correct amount of child support in compliance with Rule 32, Ala. R. Jud. Admin. Horwitz, 739 So.2d at 1120. We also held that the mother had failed to present evidence that the 19-year-old daughter was dependent and that, therefore, she was not entitled to child support. This court determined that the trial court's division of the marital property was inequitable in light of the following facts:
"During the marriage, the parties started an optical business. There was evidence that the mother was never listed as a joint owner of the business, although she testified that she believed she was a joint owner with the father. The parties both worked at the business. At the time of the hearing, they had established three other optical businesses. A true value of the businesses cannot be ascertained from the record. The tax returns show that the businesses made profits ranging from $20,000 to $60,000. The tax returns show that the father reported an income of less than $30,000 although the businesses reported advances to the officers ranging up to $120,000. The mother presented an array of financial documents and testified that during the marriage the parties' living expenses were paid from business accounts. There was testimony indicating that the father received advances from the businesses of $120,000 a year. There was testimony indicating that for the businesses to prosper, the father should not withdraw over $60,000 from them. The mother presented documents indicating that the businesses have a net worth of $500,000, documents showing the father with an income of $95,000 a year and a net worth of $927,000. The father stated that in most years the parties' took out $120,000 to $180,000 from the businesses."
739 So.2d at 1121-22. We further determined that the court's award to the mother of the father's equity in the marital home was inequitable because the record included evidence that the parties had little equity in the martial home and that they would be required to pay a balloon payment in the amount of $80,670. 739 So.2d at 1123. We reversed that portion of the court's judgment concerning the property division and alimony and remanded the case to the Macon Circuit Court.
On remand, the Macon Circuit Court amended its original 1998 order on February 4, 2000, to provide, in pertinent part, as follows:
"In making a division of property the court awarded [the mother] the home of the parties and required [the father] to make payments thereon for a term of one year. In retrospect the court is of the opinion that [the mother] should still receive the home but that she should receive the home free and clear of any debt. Consequently, the court will require [the father] to pay any outstanding debt on the home until that debt is paid. In the event that [the mother] sells the home she shall receive any equity realized from such sale. Since the amortization schedule provides that the repayment will require a period of more than 10 years it is the Order of the court that this sum is to be considered periodic alimony for the purposes of this divorce and is to be treated legally as periodic alimony.
"....

*340 "(1) [The mother] shall have all right title and interest in and to the marital domicile free and clear of any debt. [The father] has the option of paying any remaining debt according to the terms of the existing note and mortgage or he may pay the balance. In any event [the father] shall insure that the property is not foreclosed. In the event that [the mother] sells the property she shall receive any equity in said home.
"(2) The amount to be received by [the mother] for her interest in the family business shall be paid according to the attached amortization schedule which is attached hereto and made a part hereof by reference as if fully set forth herein, such sums to be considered periodic alimony as previously stated. [[2]]
"(3) Child support for the minor child of the parties is increased to the sum of Eight Hundred Dollars ($800) per month commencing in March of 2000.
"(4) As further periodic alimony the court requires that the father pay for the mother's benefit a policy of hospital and health insurance through the group program he has at his Optical stores and comparable to the coverage that he provides for the remainder of his employees and for himself, in the event he is able to do so through any of his group hospital insurance carriers.
"(5) [The father's] February payment of child support and the sums ordered in paragraph two shall be due and payable on or before February 15, 2000. Each payment will be due on the first of the month and will be considered in arrears if not paid by the 15th of each month thereafter.
"(6) All other provisions of the Decree of Divorce not specifically modified herein or in direct conflict with provisions of this Order shall remain in place and shall be enforceable."
Neither party appealed from this order issued on remand.
On October 23, 2000, the mother filed in the Macon Circuit Court a petition for a rule nisi, seeking to hold the father in contempt for failing to pay the mortgage payment on the marital home, thus allowing the home to be foreclosed upon, and alleging that the father had failed to pay the $3,000 per month in periodic alimony. The trial court ordered the father to appear on October 31, 2000, to show cause why he should not be found in contempt. The father filed a motion to continue the hearing.
On November 13, 2000, the father notified the court that he had filed a petition for bankruptcy relief under Chapter 7 of the United States Bankruptcy Code, and he requested that all matters in the contempt action be stayed pending resolution of the bankruptcy proceeding. On November 14, 2000, the court entered an order placing all matters on the administrative docket pending resolution of the father's bankruptcy proceeding.
On April 6, 2001, the bankruptcy court entered an order terminating the automatic stay, pursuant to 11 U.S.C., § 362, with respect to the collection of periodic alimony. The bankruptcy court noted that alimony in gross or property-settlement obligations are "nondischargeable in certain instances. However, nondischargeability of these claims must be determined by the bankruptcy court upon the filing of a timely complaint. See 11 U.S.C., § 523(c)(1). No such complaint has been filed and the time for doing so in this case has expired." *341 Accordingly, the bankruptcy court ordered that the father's obligations arising from property settlements or alimony in gross were discharged and not subject to collection. On July 26, 2001, the State filed in the Macon Circuit Court a contempt petition on behalf of the mother for nonpayment of child support; at that time, the father was $6,600 in arrears in child support and $54,000 in arrears in periodic alimony. Because the father had moved to Lee County, the State filed a criminal nonsupport contempt petition in that county. Subsequently, all proceedings were transferred to Lee Circuit Court (hereinafter "the trial court").
On November 8, 2001, a trial was held by the Lee Circuit Court on the State's petition for criminal contempt for nonpayment of child support. The father was found guilty of willful and contumacious contempt, and he was ordered to pay his child-support arrearage. The father paid the arrearage and he paid child support until the son was emancipated in 2002. However, the father failed to pay any periodic-alimony payments. On December 18, 2001, the State filed a second contempt petition on behalf of the mother for the father's failure to pay periodic alimony. That case was continued several times. A hearing was held on August 20, 2003. On August 25, 2003, the trial court entered an order, which provided, in pertinent part:
"1. [The mother] is hereby awarded a Judgment in her favor and against [the father] in the amount of $149,576. This Judgment is derived from testimony submitted by the Lee County Department of Human Resources based upon its calculations of the non-payment of monetary award rendered by the Macon County Circuit Court on the 4th day of February 2000 with said Order being entitled ORDER ON REMAND. Furthermore, [the father] is found to be in civil contempt but not willful contempt, in that, evidence so presented at this hearing mitigates the willful failure of [the father] to comply with the Order of February 4th, 2000. The aforesaid Judgment of $149,576 includes interest.
"2. [The father] may purge himself of contempt by paying for the next 24 consecutive months the monthly sum of $800 to be applied toward and against the aforesaid Judgment. Monthly payments shall commence on or about the 5th day of September, 2003. Commencing on the 5th day of August, 2005 monthly payments shall be reduced to the amount of $500 and shall continue in the amount of $500 a month subject to further orders of this Court. Any execution of the aforesaid Judgment shall be limited to the monthly payments set forth except that any non-payment of any monthly payments heretofore ordered may be executed upon immediately by [the mother].
"3. This court reserves jurisdiction as to any award of periodic alimony."
The mother appeals, arguing that the trial court abused its discretion in failing to award a reasonable monthly payment toward the father's alimony arrearage and in limiting execution of the judgment to the monthly payments provided for in the trial court's order. She further argues that the trial court abused its discretion in failing to find the father in contempt for his failure to make the monthly mortgage payments on the marital residence.
At the hearing, a Department of Human Resources ("DHR") employee testified that as of July 2003 the father owed $124,305.42, plus interest in the amount of $25,270.79, arising from the father's failure to pay any of the $3,000 per month in periodic alimony awarded pursuant to the amortized schedule of payments attached *342 to the Macon Circuit Court's February 4, 2000, order for the mother's interest in the family business.
The father testified that he has no retirement accounts, savings accounts, or certificates of deposit and that his current wife owns his car and his home. He testified that his adjusted gross income for 2000 was $76,693, but he claimed that $71,392 of that income was from repayment of loans he made during previous years. The father admitted that he "drew money" out of an alarm businesses that he owned in 2000. He testified that several of the optical businesses in which he owned stock or was listed as an officer were involved in a lawsuit that alleges that $800,000 worth of assets belonging to the optical businesses were fraudulently transferred. The lawsuit was filed in 2002 by the trustee for the father's bankruptcy estate, and it alleges that the father received less than reasonable value for the transfer of the assets to the businesses and seeks to void those transfers. The father stated that he is not a party to that lawsuit. His current wife works for one of the optical businesses involved in the lawsuit.
The father testified that he obtained a real-estate license in 2001, that his reported adjusted gross income for 2001 was $8,451, and that his reported adjusted gross income from selling real estate in 2002 was $54,133. He testified that he formed a corporation for his real-estate business in which he is the sole shareholder and that the company pays an employee $18,000 per year to manage the father's commissions and to show property.
The father testified that he pays his current wife $1,850 per month for expenses, out of a purported $2,700 per month in net disposable income. However, he admitted that he omitted country-club dues of $300 to $400 per month, which his wife pays.[3] The father testified that he owes the Internal Revenue Service for taxes in 2000 and that he paid his taxes for 2002 with a loan from John Rice, who employs the father as a real estate broker. The father never made any attempt to pay the mother the $3,000 per month he was ordered to pay by the Macon Circuit Court in its February 4, 2000, order.
The mother testified that the parties' son lives with her in an apartment because the father had allowed the marital home to be foreclosed upon. She stated that the son is 19 years old and plans on attending college. She testified that she receives $368 per month in Supplemental Security Income ("SSI")[4] and that she is currently unable to work because of physical injuries she received as a result of an automobile accident in 2002.[5] She testified that she is not entitled to Social Security disability benefits because the father failed to pay into the Social Security system for her period of employment with Midway Optical, one of the parties' optical businesses.[6]
*343 We note that the father did not seek review of the Macon Circuit Court's order on remand characterizing as periodic alimony the amount owed to the mother for her interest in the family business. "`Under the doctrine of the "law of the case," whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.'" Stephens v. Stephens, 699 So.2d 194, 196 (Ala.Civ.App.1997)(quoting Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987)). See also Stephens v. Stephens, 718 So.2d 54 (Ala.Civ.App.1998)(defendant failed to raise argument regarding the payment terms of a promissory note in previous appeals and the law-of-the-case doctrine prevented defendant from making that argument in his subsequent appeal).
The mother contends that if the father is allowed to pay $800 per month, subsequently to be reduced to $500 per month, it will take more than 23 years for the father to repay the principal alone on the amount he owes the mother and that the judgment will never be repaid during her lifetime because the interest owed will exceed the monthly payment ordered. The trial court has discretion to set a reasonable arrearage payment schedule commensurate with a party's ability to pay. See Henderson v. Henderson, 680 So.2d 373 (Ala.Civ.App.1996)(trial court did not abuse its discretion in ordering the father to pay $50 per month toward a $2,954 arrearage where father made between $400 and $750 weekly, had weekly child-support obligations totaling $182, and had insurance obligations on behalf of the children).
In State ex rel. Thompson v. Thompson, 586 So.2d 7, 8 (Ala.Civ.App.1991), this court stated that "where a large arrearage is owed, the trial court may abuse its discretion in failing to award a large enough amount toward the arrearage to satisfy the debt within a reasonable period of time." In Thompson, this court held that the trial court had erred in allowing the father to pay his child-support arrearage of over $32,000 at the rate of $10 per week. In Williams v. Williams, 554 So.2d 1046 (Ala.Civ.App.1989), this court held that the trial court had abused its discretion in ordering the husband to pay $150 per month on a $41,000 alimony arrearage and interest that had accumulated on that arrearage, when the interest alone on the arrearage would be $415 per month. Here, the trial court abused its discretion in ordering payments on the arrearage that will not satisfy the judgment within a reasonable period of time.
The mother argues that the trial court erred in failing to find the father in contempt for failing to make the mortgage payments as ordered in the February 4, 2000, judgment of the Macon Circuit Court and that the trial court should have ordered the father to purge himself of contempt by compensating the mother for the loss of the marital home. Although the mother's December 18, 2001, contempt petition did not seek to find the father in contempt for failing to make the mortgage payments and allowing the foreclosure, the transcript from the hearing indicates that the parties tried this issue by implied consent.[7] Rule 15(b), Ala. R. Civ. P., provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been *344 raised in the pleadings." The trial court asked the father's counsel if the father was ready to proceed "[t]o show cause why he should not be held in contempt of Court for failing to obey that order or do we stipulate that there are arrears in that case due to the foreclos[ure] of the home?" The father's counsel stated that there were "some arrearages" and that the issue to be determined was the father's ability to pay. The father testified that he had made some of the monthly mortgage payments, and he admitted that he knew that he had been ordered to pay any outstanding debt on the home in order to prevent foreclosure. Accordingly, the trial court had before it the issue whether the father was in contempt for failing to pay the mortgage payments on the marital home.
The trial court's final order does not address the issue of contempt in regard to the father's failure to pay the mortgage payments.
"A judgment which grants part of the relief but omits reference to other relief put in issue by the pleadings will ordinarily be construed to settle all issues by implication. Where a judgment is silent with regard to the disposition of a matter, it is presumed that the claim is denied."
46 Am.Jur.2d Judgments § 94 (1994)(footnotes omitted); see also Spurlock v. McCollum, 836 So.2d 910 (Ala.Civ.App.2002)(trial court did not err in not holding the husband in contempt because the trial court implicitly found that the husband's behavior was insufficient to warrant the imposition of contempt).
The purpose of civil contempt is to effectuate compliance with court orders, not to punish the contemnor. Watts v. Watts, 706 So.2d 749 (Ala.Civ.App.1997). The father admitted that he failed to pay all of the mortgage payments on the marital home and that he allowed the foreclosure upon the home. Inability to pay alimony is a defense to contempt. Cook v. Cook, 578 So.2d 1354 (Ala.Civ.App.1991). The father contended at trial that he was unable to pay. However, the same evidence of inability to pay was presented as a defense to the contempt petition regarding the alimony award related to the mother's interest in the family business. The trial court's finding of contempt regarding the alimony award related to the family business is inconsistent with its implicit finding of no contempt regarding the mortgage payments; therefore, we reverse that portion of the trial court's judgment.
The mother argues that the trial court erred in limiting execution of the judgment to the monthly payments on the arrearage. Accrued installment payments for child support or alimony are final judgments, and an order of a trial court permitting payment of such judgments in installments is not a bar to any other process for collection of judgments, such as execution or garnishment. State ex rel. B.D.N. v. D.S., 591 So.2d 878, 879 (Ala.Civ.App.1991). This court in Osborne v. Osborne, 57 Ala.App. 204, 207, 326 So.2d 766, 767 (Civ.1976), stated:
"We comprehend that a contempt of court may be purged by an order of payment of a sum upon past-due installments, but such order should not be a bar to collection of the judgment by execution or garnishment if assets of defendant are available to such process."
In the present case, the trial court erred in restricting execution of the judgment to the monthly payments. As we stated in Osborne, supra, "accrued installments of support are final judgments and may be collected as any other judgment. An order of the trial court permitting the payment of such judgments in installments is not a bar to any other process for collection *345 of judgments." 57 Ala.App. at 207, 326 So.2d at 767. Although it does not appear that the father currently has the assets to satisfy the arrearage, the mother should not be limited in obtaining what is owed to her if the father obtains such assets.
The judgment of the trial court is reversed, and the case is remanded for proceedings consistent with this opinion.
The mother's request for an attorney fee on appeal is granted in the amount of $1,000.
REVERSED AND REMANDED.
THOMPSON and PITTMAN, JJ., concur.
CRAWLEY, J., concurs in part and dissents in part, with writing, which MURDOCK, J., joins.
CRAWLEY, Judge, concurring in part and dissenting in part.
I concur with all parts of the main opinions except I dissent from the reversal of the amount of monthly payments the trial court ordered the father to make on his past-due periodic alimony. "The issue before the court ... is whether the husband currently has the financial ability to comply with the terms of the trial court's latest order." See Cook v. Cook, 578 So.2d 1354, 1357 (Ala.Civ.App.1991).
"[I]f the ability of a party to pay [spousal] support is so exceeded that the [payor] is unable to meet his own cost of self-maintenance without sinking into insolvency, the best interests of the [payee spouse] are not served. Pruett v. Pruett, 333 So.2d 580 (Ala.Civ.App.1976)."
578 So.2d at 1358.
MURDOCK, J., concurs.
NOTES
[1] The father appealed, asserting that he should not have been ordered to be responsible for the younger daughter's medical insurance. However, this court affirmed the trial court on that issue because that provision of the trial court's order was, in essence, a provision that the father had submitted to the trial court.
[2] The amortization schedule provided that the mother would receive $3,000 per month for 131 months.
[3] The father testified that the membership was in his current wife's name but that he has made business contacts through the membership.
[4] SSI is an entitlement program for three groups of people: the aged, the blind, and the disabled. To be eligible for SSI benefits, a person must have limited income and resources.
[5] The mother testified that the other driver involved in the accident was at fault and that he is now deceased. She testified that there is no lawsuit pending regarding the accident and that none would be filed.
[6] SSI benefits are different from Social Security disability benefits (often referred to as "SSDI"). To be eligible for SSDI benefits, a person must show "insured status" by having paid into the Social Security system through Federal Insurance Contributions Act ("FICA") taxes on earned income.
[7] A statement of facts included in a motion in limine filed by the mother does contend that the father was in contempt for failing to make the mortgage payments. However, a motion in limine is not a pleading. See Rule 7(a), Ala. R. Civ. P.