Frieda Dianne Horwitz ("the wife") and Allan Arnold Horwitz ("the husband") were divorced in 1998. This is the third time they have been before this court. See Horwitz v. Horwitz, 739 So.2d 1118 (Ala.Civ.App. 1999) ("Horwitz I"), and Horwitz v. Horwitz, 897 So.2d 337
(Ala.Civ.App. 2004) ("Horwitz II").
In Horwitz I, this court determined, among other things, that the trial court's division of the parties' marital property was inequitable; accordingly, we reversed the property-division and periodic-alimony portions of the parties' divorce judgment and remanded the case to the trial court. In February 2000, on remand, the trial court amended the alimony and property-division portions of the divorce judgment and provided, among other things, (1) that the wife was to be awarded the marital home free and clear of any debt, that the husband was to make the mortgage payments, and that those payments were to be considered periodic alimony; and (2) that the husband was to pay the wife $3,000 per month for 131 months for the wife's interest in the family optical business and that those payments were also to be considered periodic alimony. Neither party appealed from the order on remand.
In October 2000, the wife filed a petition seeking to hold the husband in contempt for failing to pay periodic alimony in the amount of $3,000 per month and for failing to make the mortgage payments on the marital home, thus allowing the home to be foreclosed upon. In November 2000, the husband requested that the contempt action be stayed pending the resolution of his petition for Chapter 7 bankruptcy relief. The trial court placed the contempt action on its administrative docket. In April 2001, the bankruptcy court terminated its automatic stay of proceedings involving the collection of periodic alimony.
In December 2001, the State of Alabama filed a contempt petition on behalf of the wife, alleging that the husband was in arrears in paying periodic alimony. In August 2003, the trial court found the husband in civil (but not willful) contempt and entered a judgment in favor of the wife in the amount of $149,576, representing the amount of the arrearage, including interest, resulting from the husband's failure to pay the wife $3,000 per month for her interest in the family optical business. The court ordered that the husband could purge himself of contempt by paying $800 per month toward the arrearage for 24 months; the court further ordered that, after 24 months, the husband's payments on the arrearage would be reduced to $500 *Page 125 
per month, and it limited the wife's execution of the judgment to the amount of the monthly payments, rather than the full amount of the judgment.
The wife appealed, arguing that the trial court had exceeded the limits of its discretion (1) by failing to order a reasonable monthly payment toward the husband's periodic-alimony arrearage; (2) by limiting execution of the judgment to the amount of the monthly payments; and (3) by failing to find the husband in contempt for his failure to make the monthly mortgage payments on the marital home. See Horwitz II, 897 So.2d at 342. With respect to the three issues raised by the wife in Horwitz II, this court held (1) that the trial court had exceeded the limits of its discretion "in ordering payments on the arrearage that will not satisfy the judgment within a reasonable period of time," 897 So.2d at 343; (2) that the trial court had "erred in restricting execution of the judgment to the monthly payments," 897 So.2d at 344; and (3) that "[t]he trial court's finding of contempt regarding the alimony award related to the family business is inconsistent with its implicit finding of no contempt regarding the mortgage payments; therefore, we reverse that portion of the trial court's judgment." 897 So.2d at 344.
After this court's decision in Horwitz II, the trial court heard arguments on December 23, 2004, and allowed the parties to file briefs outlining their positions with respect to the action the court should take on remand. The trial court stated that it did not believe an evidentiary hearing was necessary, and neither party sought to introduce evidence. The court informed the parties that it would review the evidence submitted to a different judge at a previous hearing held on August 20, 2003. That evidence served as the basis for the following facts recited in this court's opinion inHorwitz II:
"The [husband] testified that he has no retirement accounts, savings accounts, or certificates of deposit and that his current wife owns his car and his home. He testified that his adjusted gross income for 2000 was $76,693, but he claimed that $71,392 of that income was from repayment of loans he made during previous years. The [husband] admitted that he `drew money' out of an alarm business that he owned in 2000. He testified that several of the optical businesses in which he owned stock or was listed as an officer were involved in a lawsuit that alleges that $800,000 worth of assets belonging to the optical businesses were fraudulently transferred. The lawsuit was filed in 2002 by the trustee for the [husband's] bankruptcy estate, and it alleges that the [husband] received less than reasonable value for the transfer of the assets to the businesses and seeks to void those transfers. The [husband] stated that he is not a party to that lawsuit. His current wife works for one of the optical businesses involved in the lawsuit.
"The [husband] testified that he obtained a real-estate license in 2001, that his reported adjusted gross income for 2001 was $8,451, and that his reported adjusted gross income from selling real estate in 2002 was $54,133. He testified that he formed a corporation for his real-estate business in which he is the sole shareholder and that the company pays an employee $18,000 per year to manage the [husband's] commissions and to show property.
"The [husband] testified that he pays his current wife $1,850 per month for expenses, out of a purported $2,700 per month in net disposable income. However, he admitted that he omitted country-club dues of $300 to $400 per month, *Page 126 
which his [current] wife pays.[3] The [husband] testified that he owes the Internal Revenue Service for taxes in 2000 and that he paid his taxes for 2002 with a loan from John Rice, who employs the [husband] as a real-estate broker. The [husband] never made any attempt to pay the [wife] the $3,000 per month he was ordered to pay by the Macon Circuit Court in its February 4, 2000, order.
"The [wife] testified that the parties' son lives with her in an apartment because the [husband] had allowed the marital home to be foreclosed upon. She stated that the son is 19 years old and plans on attending college. She testified that she receives $368 per month in Supplemental Security Income ('SSI')[4] and that she is currently unable to work because of physical injuries she received as a result of an automobile accident in 2002.[5] She testified that she is not entitled to Social Security disability benefits because the [husband] failed to pay into the Social Security system for her period of employment with Midway Optical, one of the parties' optical businesses.[6]
On February 23, 2005, the trial court entered a judgment that found the husband in civil contempt for failing to make the mortgage payments on the marital home and for allowing a foreclosure on the home; that determined that the arrearage from the husband's failure to make the mortgage payments as periodic alimony was $47,300 and added that amount to the other arrearage already calculated, making the husband's total periodic-alimony arrearage $196,876; that awarded a judgment in favor of the wife in the amount of $196,876, plus interest; that removed the restriction on the wife's execution against the judgment and provided that "said judgment can be collected as any other judgment"; and, finding that the husband had presented "extenuating and mitigating circumstances as to his limited ability to pay," that determined "that $1,000 per month is a reasonable amount for [the husband] to pay as a purge of his contempt herein." The trial court ordered that the husband's payments on the arrearage "shall terminate upon the remarriage of the [wife] or the death of either party or under circumstances as provided in § 30-2-55, Ala. Code 1975."
The wife filed a postjudgment motion pointing out that the trial court had failed to add the interest that had accrued on the $47,300 arrearage in the mortgage payments; the trial court subsequently amended the judgment to add $9,933 in interest, for a total judgment of $206,809 *Page 127 
in favor of the wife. The wife appeals, raising two issues.
 I.
The wife argues that the trial court's order on remand was inconsistent with the appellate mandate in HorwitzII. First, she says, the opinion in Horwitz II
required that the husband's payments toward the arrearage be sufficient to satisfy the judgment within a reasonable time. She maintains that increasing the husband's monthly payments by a mere $200 will not accomplish that objective. Next, she says, this court's opinion in Horwitz II "did not condition its holding on a determination by the trial court of [the husband's] ability to pay the amount ordered." Therefore, the wife maintains that the trial court was acting beyond this court's mandate when it found that the husband "presented extenuating and mitigating circumstances as to his limited ability to pay."
Addressing the wife's second argument first, we must point out that in Horwitz II this court neither held nor implied that the objective of setting the husband's payments high enough to reduce the arrearage within a reasonable time should be accomplished without regard for the husband's ability to pay. In fact, the main opinion in Horwitz II citedHenderson v. Henderson, 680 So.2d 373 (Ala.Civ.App. 1996), for the proposition that "[t]he trial court has discretion to set a reasonable arrearage payment schedulecommensurate with a party's ability to pay." Horwitz II,897 So.2d at 343 (emphasis added). The two judges who dissented from the reversal of that part of the judgment ordering the husband to pay $800 per month toward the arrearage noted that
 "`[i]f the ability of a party to pay [spousal] support is so exceeded that the [payor] is unable to meet his own cost of self-maintenance without sinking into insolvency, the best interests of the [payee spouse] are not served.'"
Horwitz II, 897 So.2d at 345 (Crawley, J., joined by Murdock, J., concurring in part and dissenting in part) (quotingCook v. Cook, 578 So.2d 1354, 1358 (Ala.Civ.App. 1991)).
The trial court's ordering the husband to pay $1,000 per month toward an extremely large arrearage judgment was based, in part, on the court's review of evidence presented at a previous hearing on August 20, 2003. The wife evidently believes that the husband has a greater ability to pay now than he did in 2003, yet she did not seek to present any evidence to that effect on remand. Based on the trial court's comments at the December 2004 hearing, it is evident that the court attempted to strike a fair balance between ordering the husband to make an arrearage payment that would satisfy his obligations to the wife within a reasonable time and allowing the husband to remain financially solvent. To have disregarded the husband's ability to pay, as the wife contends the trial court should have done, would have been to have ignored both common sense and our appellate mandate in Horwitz II. The trial court did not violate that mandate by finding that the husband had "presented extenuating and mitigating circumstances as to his limited ability to pay."
The wife contends that the parties agreed at the December 2004 hearing that a 10-15 year payment schedule would be reasonable. She argues that, if the husband pays only $1,000 per month toward the periodic-alimony arrearage, he will never satisfy the $206,809 judgment in her favor because, she says, $1,000 will not even pay for the interest that accrues on the judgment each month, much less reduce the principal. That argument is based upon the assumption that §8-8-10, *Page 128 
Ala. Code 1975, which establishes a 12 percent per annum (or a 1 percent per month) rate of interest on judgments, applies,[1] and that the first sentence of § 8-8-11, Ala. Code 1975, applies. It appears, however, that the second sentence of § 8-8-11 is the applicable provision. That section states:
 "Except as provided in this section, when partial payments are made, the interest due is first to be paid and the balance applied to the payment of the principal. In the case of a judgment for
child or spousal support, or a judgment for medical support of a child or spouse, any partial payment shall be applied first to the principal, and the remaining balance, if any, shall be applied to the interest."
(Emphasis added.) If the husband makes monthly payments of $1,000 and those payments are first applied to the principal, he will be able to pay the principal amount of the judgment in 17 years, 3 months.[2] Based upon a review of all the circumstances, we cannot say that the trial court exceeded the limits of its discretion by increasing the husband's payments to $1,000 per month.
 II.
The wife contends that the trial court erred by ordering that the husband's payments on the periodic-alimony arrearage will terminate upon her remarriage or upon the death of either party. We agree.
 "`"The law in Alabama is clear that past due installments of alimony and child support payments become a debt of record. . . . Such judgments may be collected in the same way as are other judgments."'"
Joe v. Joe, 891 So.2d 879, 882 (Ala.Civ.App. 2004) (quoting Garrett v. Garrett, 628 So.2d 659, 661
(Ala.Civ.App. 1993) (quoting in turn Fletcher v.Fletcher, 56 Ala.App. 492, 493, 323 So.2d 379, 380
(Civ.1975))). The wife's death will not end the husband's obligation to satisfy the judgment for the periodic-alimony arrearage entered against him. Joe v. Joe,891 So.2d at 882. "[T]he amount [of periodic alimony] decreed to [the wife] during her lifetime and in arrears at the time of her death constitutes a liability which survive[s] in favor of her personal representative." Heaton v. Davis,216 Ala. 197, 199, 112 So. 756, 757 (1927). The husband's death will not end the wife's right to have the judgment satisfied from his estate. See Solinger v. Solinger, 57 Ala.App. 225,327 So.2d 721 (1975). Nor will the wife's remarriage affect her right to collect on the judgment. See Sanders v.Burgard, 715 So.2d 808 (Ala.Civ.App. 1998).
That portion of the trial court's judgment ordering that the husband's payments on the periodic-alimony arrearage terminate upon the remarriage of the wife or upon the death of either party is reversed, and the cause is remanded with instructions to delete the termination provision. All other portions of the trial court's judgment are affirmed.
The wife's request for an attorney fee on appeal is denied.
[1] In arguments to the trial court on remand, the wife's attorney referred to the 12 percent per annum interest rate on judgments; the trial court agreed that 12 percent was the applicable rate of interest.
[2] With payments of $1,000 per month ($12,000 per year), a principal amount of $206,809 will be paid in 17.23 years.
[3] "The [husband] testified that the membership was in his current wife's name but that he has made business contacts through the membership.
[4] "SSI is an entitlement program for three groups of people: the aged, the blind, and the disabled. To be eligible for SSI benefits, a person must have limited income and resources.
[5] "The [wife] testified that the other driver involved in the accident was at fault and that he is now deceased. She testified that there is no lawsuit pending regarding the accident and that none would be filed.
[6] "SSI benefits are different from Social Security disability benefits (often referred to as `SSDI'). To be eligible for SSDI benefits, a person must show `insured status' by having paid into the Social Security system through Federal Insurance Contributions Act ('FICA') taxes on earned income."
Horwitz II, 897 So.2d at 342.
 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS. *Page 129 
CRAWLEY, P.J., and PITTMAN, MURDOCK, and BRYAN, JJ., concur.
THOMPSON, J., concurs as to Part II and dissents as to Part I, without writing.