765 So.2d 630 (1999)
Jean C. REDMAN and James E.S. Burns
v.
FEDERAL HOME LOAN MORTGAGE CORPORATION and SouthTrust Mortgage Corporation.
1972117.
Supreme Court of Alabama.
December 30, 1999.
Rehearing Denied March 10, 2000.
*631 William K. Bradford, Birmingham; and James E. Harris, Birmingham, for appellants.
Alton B. Parker, Jr., and Peter M. Wright of Spain & Gillon, L.L.C., Birmingham, for appellees.
COOK, Justice.
Jean C. Redman and James E.S. Burns (hereinafter sometimes collectively referred to as "the defendants") appeal from a summary judgment in favor of South-Trust Mortgage Corporation and Federal Home Loan Mortgage Corporation on a complaint in ejectment The judgment awarded damages for the defendants' unlawful use and occupancy of the mortgaged premises. We affirm.
On February 15, 1995, Kenneth A. Redman executed a note ("the Note") to SouthTrust Mortgage Corporation ("SouthTrust"), and he and his wife, Jean C. Redman, executed a mortgage ("the Mortgage") to SouthTrust, both documents relating to the Redmans' purchase of a home in Vincent. On February 17, 1995, SouthTrust assigned the Note and the Mortgage to Federal Home Loan Mortgage Corporation ("Federal"). Lynn Owens, an assistant vice president of South-Trust, testified that SouthTrust, with the consent of Federal, did not record the assignment and did not deliver it to Federal, so that SouthTrust could service the Mortgage in SouthTrust's name.
On August 23, 1995, Jean Redman sued for a divorce from Kenneth Redman, and Mr. Redman moved out of the home in Vincent. In February 1996, James E.S. Burns moved into the Vincent home with Mrs. Redman and lived with her there through July 1998.
Mrs. Redman testified that she assumed the responsibility of making the monthly mortgage payments on the home in Vincent. However, when the Mortgage was in arrears in February 1996, SouthTrust contacted Mr. Redman. Mr. Redman made a monthly payment on the Mortgage and gave SouthTrust his new address in Hoover.
*632 The Mortgage was in arrears again in April because Mrs. Redman's check for the April mortgage payment was returned for insufficient funds. Mrs. Redman testified that she did not receive notice from her bank about the return of the April mortgage-payment check; however, she also testified that in July or August 1996 she mailed to SouthTrust a money order in an amount sufficient to cover two mortgage payments.
The Mortgage was in arrears again in July and August 1996. On August 16, 1996, SouthTrust mailed a letter to Kenneth A. Redman and Jean C. Redman at the Vincent address to inform them of the default and to demand payment of the outstanding debt ($1,757.77) by September 16, 1996. In this letter, SouthTrust advised the Redmans of its right to foreclose if payment was not made.
In September 1996, Burns wrote a check for a mortgage payment, made payable to Mrs. Redman, which she endorsed and sent to SouthTrust. Although SouthTrust initially returned Burns's check because it could not locate an account in Burns's name, it apparently accepted the check when it was sent again.
Mr. Redman contacted SouthTrust in September 1996 to request a delay in foreclosure pending the outcome of the parties' divorce trial. SouthTrust agreed to delay foreclosure, and it accepted and processed an additional monthly payment toward the Mortgage.
The divorce trial did not take place in September, and the Redmans were in default again in October 1996. SouthTrust renewed foreclosure proceedings and refused to accept or process further monthly payments. On October 22, 1996, South-Trust sent, by certified mail and by regular mail, notices of default to the Redmans at the Vincent address and at the Hoover address. The letter set out the consequences of default and demanded payment of the outstanding debt of $2,195.34 by November 21, 1996. The certified mailings were signed for and, although Mrs. Redman testified that the signature on the certified-mail receipt was not hers, it is undisputed that the notices were mailed to both addresses and that Mr. Redman received the notice sent to the Hoover address.
During the Redmans' divorce trial in December 1996, Mr. Redman testified that the Mortgage was in default and that SouthTrust was ready to foreclose. Mrs. Redman was shown, and was questioned about, the certified-mail notice of default SouthTrust had sent to the Vincent address in October. Because the testimony during the trial revealed the Redmans' difficulties with SouthTrust, the judge directed the lawyers to determine the status of the parties' mortgage account with SouthTrust. Without receiving the information about the Mortgage, the judge entered a judgment of divorce in which he awarded the Vincent home to Mrs. Redman and ordered her to pay any indebtedness associated with the home. Mrs. Redman did not pay the arrearage of $2,195.34 and did not obtain a deed to the home.
On January 13, 1997, SouthTrust mailed a notice of foreclosure to Mr. Redman's Hoover address. SouthTrust published notices in a Shelby County[1] newspaper on January 15, 22, and 29, 1997, advertising the foreclosure sale, which was scheduled for February 6, 1997. SouthTrust purchased the property at the foreclosure sale for $49,362.80 and conveyed the property to Federal on March 10, 1997.
Federal filed a complaint in ejectment against the Redmans, and later amended the complaint to add Burns as a defendant. Mrs. Redman and Burns filed a counterclaim against Federal and a third-party complaint against SouthTrust, alleging fraud, wrongful foreclosure, and breach of contract.
The trial court entered a partial summary judgment in favor of Federal and *633 SouthTrust on the ejectment claim and on the defendants' claims of fraud and wrongful foreclosure. The trial court allowed Federal to amend its complaint to claim use-and-occupancy damages against the defendants for refusing to vacate the house after the foreclosure sale on February 6, 1997.
On July 30, 1998, the trial court entered a final summary judgment in favor of Federal and SouthTrust and against the defendants, on all remaining claims, and issued a writ of possession. The court also awarded Federal $8,280 in damages for the defendants' unlawful use and occupancy of the Vincent property.[2] Mrs. Redman and James E.S. Burns appeal.
Mrs. Redman and Burns contend that they presented sufficient substantial evidence of fraud and of wrongful foreclosure to withstand the motion for summary judgment. The defendants argue that the Mortgage requires the lender to notify the debtor in default before accelerating payment or pursuing other remedies, and that Mrs. Redman's testimony that she did not receive actual notice of default, foreclosure, or demand for possession created a factual conflict as to the issue of the validity of the foreclosurean issue, say the defendants, that should have gone to a jury.
Further, argue Mrs. Redman and Burns, the summary judgment was based on what they refer to as SouthTrust and Federal's erroneous argument that when, as here, notice is given to borrowers according to Alabama statutory requirements, that notice is sufficient even if a more stringent form of notice is called for in the mortgage instrument.
With regard to notice of default and foreclosure, the Mortgage provides:
"12. Successors and Assigns Bound; Joint and Several Liability; Co-Signors. ... Any borrower who cosigns this Security Instrument, but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the property under the terms of the Security Instrument; (b) is not personally obligated to pay the sums secured by the Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent."
"14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail, unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.... Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph."
"21.... Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument.... The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) the failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the *634 property. The notice shall further inform Borrower of the right to reinstate after acceleration and sale. If the default is not cured, on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by the Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorney's fees and cost of title evidence.
"If Lender invokes the power of sale, Lender shall give a copy of notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in Shelby County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale...."
Section 35-10-13, Ala.Code 1975, provides, in pertinent part:
"Notice of said [foreclosure] sale shall be given in the county where said land is located.
"Notice of all sales under this article shall be given by publication once a week for three successive weeks in a newspaper published in the county or counties in which such land is located.... The notice of sale must give the time, place and terms of said sale, together with a description of the property."
SouthTrust complied with § 35-10-13 and with the notice provisions of paragraph 14 of the Mortgage. SouthTrust submitted copies of a letter regarding default sent to the property address. It also submitted copies of the notices of default and impending foreclosure that were sent by regular mail and by certified mail to the Vincent address and to Mr. Redman's Hoover address. Although Mrs. Redman denied receiving notice of default on the Mortgage or the mortgage-payment checks returned for insufficient funds, she clearly knew of the arrearages because, in the summer of 1996, she sent SouthTrust a money order to cover two monthly mortgage payments. Mrs. Redman also testified that she did not open SouthTrust documents that came in the mail because Kenneth Redman's name appeared first on the envelope.
During the divorce trial, which occurred before the foreclosure sale, Mrs. Redman was questioned about notices of default and notices of mortgage-payment checks returned for "insufficient funds." There was sufficient evidence of default to prompt the judge in the divorce proceeding to request that the lawyers resolve the problems with the Redmans' mortgage account with SouthTrust. Mrs. Redman testified that, after seeing the default letter during the divorce trial, she telephoned and sent letters to SouthTrust but that SouthTrust would not talk to her because she had not signed the Note. She did not keep copies of the letters she sent to SouthTrust.
This Court has held, in other contexts, that to close one's eyes to facts and circumstances reasonably apparent to the ordinary person does not relieve one of the responsibility of what the facts would have revealed if the inquiry they inspired had been made. For example, an automobile dealer may not ignore factory damage to an automobile and thereby avoid joint liability with the manufacturer for fraud (Chrysler Corp. v. Schiffer, 736 So.2d 538 (Ala.1999)); nor can a dealer, when purchasing a used car for resale, close its eyes to the true mileage and condition of a car and rely instead on an odometer reading that is patently incorrect in light of the obvious state of the car. See Hargrove v. Cantrell, 547 So.2d 488 (Ala.1989). An *635 architect cannot avoid liability by closing his or her eyes to "construction defects that even the most perfunctory monitoring would have prevented" (Watson, Watson, Rutland/Architects, Inc. v. Montgomery County Board of Educ., 559 So.2d 168, 173 (Ala.1990)); and "[a] purchaser simply cannot `[close] his eyes where ordinary diligence requires him to see,' and expect to recover in a fraudulent misrepresentation action." Hughes v. Cloud, 504 So.2d 734, 735 (Ala.1987). This Court has held that notice sufficient to preclude a bona fide purchase for value "may be actual or constructive or may consist of knowledge of facts that would cause a reasonable person to make an inquiry that would reveal the interest of a third party." Malcom v. Wilson, 534 So.2d 241, 243 (Ala.1988).
These holdings illustrate this Court's consistent disposition of issues involving parties' deliberately being uninformed in an effort to avoid liability. Thus, our inquiry here is whether Mrs. Redman and Burns, as reasonable persons, had notice of facts sufficient to cause them to make further inquiry as to the status of Mrs. Redman's mortgage account with South-Trust. We conclude that they did. It is clear from the record that the defendants closed their eyes to avoid "discovery" of the truth that was reasonably apparent: that the Mortgage was seriously in arrears and that SouthTrust was ready to legally foreclose on the property in Vincent.
Mrs. Redman and Burns are also held to have notice of everything to which a reasonable inquiry would have led. That SouthTrust, according to Mrs. Redman, would not talk to her because her name was not on the Note does not relieve Mrs. Redman of her responsibility under the Mortgage. A monthly mortgage payment and a monthly bank statement were obligations of which Mrs. Redman was aware, and whether she received documentary information about either did not lessen her responsibility to know the status of each account. To argue ignorance of the status of the Mortgage or of her checking account was to close her eyes in an effort to avoid discovering the truth. Mrs. Redman had sufficient notice of the default and the foreclosure sale, and the summary judgment in favor of SouthTrust and Federal on the claims of fraud and wrongful foreclosure was proper.
Next, Mrs. Redman and Burns contend that the trial court should have granted their motion to alter, amend, or vacate the judgment. According to the defendants, they were prevented from pursuing discovery that would have yielded evidence to defeat the summary-judgment motion on the issues of fraud and wrongful foreclosurethe unrecorded and undelivered assignment of the Mortgage by South-Trust to Federal. This argument, however, is without merit.
On October 16, 1997, the defendants filed a motion to compel answers to discovery requests, and on October 20, 1997, the trial court ordered SouthTrust and Federal to answer interrogatories and respond to requests for production of documents. Information about the assignment of the Mortgage from SouthTrust to Federal was not part of the defendants' discovery requests. SouthTrust and Federal complied with the discovery order on November 3, 1997.
The trial court heard oral arguments on the first motion for summary judgment on February 17, 1998, and, on March 13, 1998, entered a partial summary judgment for SouthTrust and Federal on the claims of fraud and wrongful foreclosure. On April 3, 1998, the defendants filed a motion to alter, amend, or vacate the partial summary judgment. On April 8, 1998, the trial court denied the motion, holding that, at the hearing on the motion for summary judgment, the defendants had not complained that discovery requests had not been complied with or that they had additional discovery requests. The trial court's partial summary judgment was based on evidence before the court, at a point in the case when there were no pending discovery requests. The motion *636 to alter, amend, or vacate that judgment was properly denied.
We note, in passing, that, when the trial court entered the partial summary judgment, if there had been a pending discovery request by the defendants for the unrecorded and undelivered assignment instrument, the production of this document would not have required a different ruling on the motion for summary judgment on the fraud and wrongful-foreclosure claims. Mrs. Redman argues that, because SouthTrust assigned the Redmans' mortgage to Federal, Federal was the proper party to conduct the foreclosure instead of SouthTrust.
An assistant vice president of South-Trust submitted an affidavit regarding the assignment of the Redmans' mortgage. She testified:
"1. [SouthTrust is] mortgagee of that certain mortgage executed by [the Redmans] to SouthTrust Mortgage Corporation on February 15, 1995, said mortgage being recorded in the Office of the Judge of Probate of Shelby County, Alabama, in instrument number 1995/4831. SouthTrust Mortgage Corporation was the servicing agent for Federal Home Loan Mortgage Corporation with reference to said mortgage loan.
". . . .
"3. On February 17, 1995, South-Trust executed an assignment of the Mortgage and the Note to [Federal]. This assignment, however, was never recorded or delivered to [Federal].
"4. SouthTrust, with [Federal's] knowledge and consent, did not record or deliver the above-referenced assignment to [Federal] so that SouthTrust could continue to service the Mortgage in SouthTrust's name, including, without limitation, collecting payments due on the Mortgage for [Federal] and foreclosing on the property in the name of SouthTrust, if necessary."
This Court quoted the following, with approval:
"`[T]he real party in interest principle is a means to identify the person who possesses the right sought to be enforced. Therefore, the term directs attention to whether [the] plaintiff has a significant interest in the particular action he has instituted.'"
Dennis v. Magic City Dodge, Inc., 524 So.2d 616, 618 (Ala.1988) (quoting 6 Charles Alan Wright et al., Federal Practice and Procedure § 1542 (1971)).
Here, legal title to the Vincent property remained in SouthTrust. At the time of the default on the Mortgage and at the time of the foreclosure, SouthTrust was the real party in interest because it possessed the right to enforce the remedies allowed by the Redmans' default.
Finally, Mrs. Redman and Burns argue that they presented sufficient evidence to create a triable issue of fact on their breach-of-contract claim. Their contentions in this regard are similar to those advanced in support of their argument that the summary judgment as to the wrongful-foreclosure claim was error; that is, that SouthTrust did not comply with the terms of the Mortgage in notifying the Redmans of their default and of the impending foreclosure. As we noted earlier, however, the record clearly reflects that SouthTrust complied with the Mortgage provisions on notice and with § 35-10-13, and there is no merit as to this argument.
For the foregoing reasons, the summary judgment in favor of SouthTrust and Federal is affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, SEE, JOHNSTONE, and ENGLAND, JJ., concur.
LYONS, J., concurs specially.
HOUSTON and BROWN, JJ., concur in the result.
*637 LYONS, Justice (concurring specially).
I concur, but I write to address one issue.
Under the Redmans' mortgage, the term "borrower" is defined so as to include both Mr. and Mrs. Redman. While Mr. Redman testified that he notified SouthTrust of his change of address, SouthTrust never received any information as to a change of address for Mrs. Redman, who still lived at the property address. Paragraph 14 of the mortgage requires that notice of foreclosure be directed to the property address or to any other address the borrower designates by notice to lender. The record contains no evidence indicating that Mrs. Redman, also a borrower, ever notified SouthTrust of a change of address. Consequently, if we are to exact strict compliance with paragraph 14, the notice of foreclosure should have been sent to the property address. According to the undisputed evidence, it is clear that SouthTrust did not comply with the terms of the contract in sending its foreclosure notices.
Other jurisdictions require compliance with contractual terms and statutory provisions. See, e.g., Houston First Am. Sav. v. Musick, 650 S.W.2d 764 (Tex.1983). However, Texas allows proof of actual notice to suffice, notwithstanding noncompliance with more stringent notice provisions in the mortgage. Jasper Fed. Sav. & Loan Ass'n v. Reddell, 730 S.W.2d 672, 674 (Tex.1987); Houston First Am. Sav., supra. See, also, Ostrow v. Higgins, 722 P.2d 936 (Alaska 1986), for a similar result under Alaska law.
Alabama law is to the contrary. In Bullock v. Bishop, 435 So.2d 24 (Ala.1983), we held that less stringent statutory standards prevail over more stringent contractual requirements. Therefore, I agree that constructive notice, coupled with compliance with statutory provisions, constituted a defense to this action alleging wrongful foreclosure.
NOTES
[1] Vincent is in Shelby County.
[2] The trial court's judgment stated that a reasonable rental value for the Vincent property was $460 per month, and the court found that the defendants had lived at the property from the date of foreclosure (February 6, 1997) until the date of the trial court's judgment (July 30, 1998) without paying for use and occupancy of the premises.