WOODALL, Justice.
Emmett Jackson and Debra Jackson, husband and wife, appeal from a summary judgment in favor of Wells Fargo Bank, N.A. (“the bank”), and U.S. Bank, National Association, as trustee for Structured Asset Securities Corporation Trust 2005-WF-3 (“the trustee”), in the Jacksons’ action against the bank and the trustee challenging a foreclosure sale involving the Jacksons’ property. We affirm in part, reverse in part, and remand.

I. Factual and Procedural Background

On February 11, 2005, the Jacksons refinanced an existing loan on their home in Mobile. In so doing, they gave a mortgage on the property, which was subsequently assigned to the bank. Although the mortgage was, in turn, assigned to the trustee, the bank continued to function as the “servicer” of the loan.
The mortgage form was an “ALABAMA — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT.” (Capitalization in original.) Paragraph 22 provided, in pertinent part:
“22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower’s breach of any covenant or agreement in this Security Instrument .... The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law....”
(Emphasis added.)
By October 2007, the Jacksons were in arrears on their mortgage payments. In that month, the Jacksons and the bank entered into a “special forebearance agreement” (“the first forebearance”), whereby the Jacksons were to make three monthly *170 payments of $389.82, beginning on November 29, 2007, and a fourth payment of $1,597 on February 29, 2008. A dispute arose over the Jacksons’ compliance with the first forebearance, and, on January 25, 2008, the bank offered the Jacksons another “special forebearance agreement,” whereby they were to make three monthly payments of $370.95, beginning on February 22, 2008, and a fourth payment of $2,405.86 on May 22, 2008. While the Jacksons and the bank were engaged in negotiations for further forebearance, the Jacksons did not make the payment of $2,405.86 that was due in May.
On July 21, 2008, while the negotiations for further forebearance were ongoing, a debt-collection representative of the trustee sent the Jacksons a “NOTICE OF ACCELERATION OF PROMISSORY NOTE AND MORTGAGE” (hereinafter referred to as “the acceleration letter”). (Capitalization in original.) The acceleration letter stated, in pertinent part:
‘YOU ARE HEREBY NOTIFIED that, pursuant to the terms of the Promissory Note and Mortgage dated the 11th day of February, 2005, to Mortgage Electronic Registration Systems, Inc. acting solely as nominee for The Mortgage Outlet, Inc., said mortgage having subsequently been transferred and assigned to [the trustee] and by virtue of default in the terms of said Note and Mortgage, [the trustee] hereby accelerates to maturity the entire remaining unpaid balance of the debt, including attorney’s fees, accrued interest, and other lawful charges, and the amount due and payable as of this date is $37,040.27. This payoff amount may change on a daily basis. If you wish to pay off your mortgage, please call our office to obtain the updated figure.
“We are at this time commencing foreclosure under the terms of the Mortgage, and enclosed is a copy of the foreclosure notice to be published in the Mobile Press-Register. Please note that the foreclosure sale is scheduled for August 15, 2008. If you wish to avoid losing the subject property, you must contact us immediately; otherwise, the foreclosure sale will take place as set forth in the publication notice, and we will take legal action to obtain possession of the subject property....”
(Capitalization in original; emphasis added.) The foreclosure sale occurred on August 15, 2008, as advertised. Subsequently, a foreclosure deed to the property was issued to K-Quad, LLC.
On September 30, 2008, the Jacksons sued the bank, the trustee, and K-Quad, alleging essentially (1) negligent or wanton foreclosure and (2) breach of contract. The complaint sought damages, as well as declaratory and injunctive relief quieting title to the property in the Jacksons. K-Quad filed an answer, which included counterclaims against the Jacksons and cross-claims against the bank and the trustee. Subsequently, K-Quad settled with all parties and was dismissed from the action. Also, K-Quad allegedly executed a quitclaim deed in favor of the bank.[1]
The bank and the trustee jointly moved for a summary judgment, contending that the Jacksons “lack any valid basis to contest the foreclosure sale.” In response to that motion, the Jacksons argued that they were not in default as of the date of the sale and that, in any case, the bank had not given notice of its intent to accelerate as required by paragraph 22 of the mortgage. Subsequently, the bank and the trustee filed an amended summary-judgment motion, contending that the Jacksons *171 had “failed to establish that they are entitled to an award of compensatory damages.” Regarding the notice issue raised by the Jacksons, the bank and the trustee merely stated: “An acceleration letter dated July 21, 2008, notified [the Jacksons] of the total amount of their outstanding debt to [the bank] and the scheduled date of the foreclosure sale.” (Emphasis added.) The bank and trustee supplemented their original summary-judgment filings with a copy of the acceleration letter. The trial court entered a summary judgment in favor of the bank and the trustee, and the Jacksons appealed.

II. Discussion

On appeal, the Jacksons contend that the summary judgment in favor of the bank and the trustee is due to be reversed on any one of a number of alternative grounds. More specifically, they insist that “[t]here are at least three independent grounds upon which a jury could find that the foreclosure in this case was wrongful,” the first of which is the alleged ground that the bank “failed to provide the notice of default and intent to accelerate as required under the mortgage.” The Jack-sons’ brief, at 30-31 (emphasis added). The bank and the trustee reiterate their position that the acceleration letter afforded all the notice required under the mortgage. Although the bank and the trustee also argue that the Jacksons’ claims fail to support an award of damages, the overriding issue on appeal is the legal effect of the acceleration letter.
It is well settled that “[t]o defeat a properly supported summary judgment motion, the nonmoving party must present ‘substantial evidence’ creating a genuine issue of material fact.” Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala.1994). Questions regarding the legal effect of unambiguous contractual provisions are questions of law, which are reviewed de novo. Bon Harbor, LLC v. United Bank, 53 So.3d 82, 91 (Ala.2010).

A. Negligent Foreclosure

Alabama has long recognized a cause of action for “wrongful foreclosure” arising out of the exercise of a power-of-sale provision in a mortgage. However, it has defined such a claim as one where “a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor.” Reeves Cedarhurst Dev. Corp. v. First American Fed. Sav. & Loan Ass’n, 607 So.2d 180, 182 (Ala.1992). Elsewhere, a wrongful-foreclosure claim is explained as follows:
“ ‘Generally the purpose for which the power of sale is given being to afford an additional and more speedy remedy for the recovery of the debt, the mortgagor is by the contract bound to exercise necessary promptness in fulfilling it and cannot complain of a legitimate exercise of the power. If in any case it is attempted to pervert the power from its legitimate purpose and to use it for the purpose of oppressing the debtor or of enabling the creditor to acquire the property himself, a court of equity will enjoin a sale or will set it aside if made. Wittmeier v. Tidwell, 147 Ala. 354, 40 So. 963 [ (1906) ], and authorities there cited. Or, as was said in the case of Castleman v. Knight, 215 Ala. 429, 110 So. 911 [ (1927) ]: “If he uses the power to sell, which he gets for that purpose, for another purpose, from any ill motive, to effect means and purposes of his own, or to serve the purposes of other individuals, the court considers that to be what it calls a fraud in the exercise of the power, because it is using the power for a purpose foreign to the legitimate purposes for which it was intended.” ’ ”
*172 Paint Rock Props, v. Shewmake, 393 So.2d 982, 983-84 (Ala.1981).
The Jacksons have not argued or alleged that the power of sale was exercised for any purpose “other than to secure the debt owed by [them].” Nor have they invited this Court to revisit or to modify existing law. “It is not the function of this Court to construct and address arguments for the parties on [a nonjuris-dictional] point.” Custom Performance, Inc. v. Dawson, 57 So.3d 90, 99 (Ala.2010). Consequently, the Jacksons present no basis on which to reverse the summary judgment as to their claim of negligent or wanton foreclosure.

B. Breach of Contract

The Jacksons’ breach-of-contract claim stands on better ground. At this stage in the litigation, there remains a fundamental failure of communication between the parties as to the function and effect of the acceleration letter. Although the Jacksons maintain that the acceleration letter was not the notice of intent to accelerate the debt required by the mortgage, the bank and the trustee tout it as evidence that they satisfied their duty under the contract. We agree with the Jacksons.
The parties’ confusion centers on the difference between notice of actual acceleration and notice merely of intent to accelerate. Similar confusion infected the litigation in Ogden v. Gibraltar Savings Ass’n, 640 S.W.2d 232 (Tex.1982), in which the Supreme Court of Texas explained:
“The term ‘notice of acceleration’ is used by the parties to express different concepts. [The debtor] refers to notice of intent to accelerate; Gibraltar refers to notice that the debt has been accelerated. Although the cases do not always clearly distinguish between the two, both types of notices are required. Notice of intent to accelerate is necessary in order to provide the debtor an opportunity to cure his default prior to harsh consequences of acceleration and foreclosure. Proper notice that the debt has been accelerated, in the absence of a contrary agreement or waiver, cuts off the debt- or’s right to cure his default and gives notice that the entire debt is due and payable. See Faulk v. Futch, 147 Tex. 253, 214 S.W.2d 614 (1948). Notice that the debt has been accelerated, however, is ineffective unless preceded by proper notice of intent to accelerate. Allen Sales & Sevicenter, Inc. v. Ryan, 525 S.W.2d 863 (Tex.1975).”
640 S.W.2d at 233-34 (emphasis added). In that connection, commentators have stated:
“[I]t should be emphasized that the Federal National Mortgage Association (Fannie Mae) — Federal Home Loan Mortgage Corporation (FNMA-FHLMC) mortgage-deed of trust form contains substantial limitations on the acceleration process. Not only does it require detailed mailed notice and a thirty-day grace period as a condition precedent to acceleration, it also affords the mortgagor the right to defeat acceleration until five days prior to foreclosure by the payment of arrearages and mortgagee’s reasonable costs and attorney’s fees. These provisions may be omitted from the FNMA-FHLMC form only when state law is more protective of the mortgagor with respect to pre-acceleration requirements and the ability to defeat acceleration once it has occurred. Because most institutional lenders wish to retain the option of selling their home mortgages to these two secondary market entities, they will be likely to use the FNMA-FHLMC form. Thus vast numbers of mortgagors in states that have not enacted legislation regulating acceleration, or whose legisla *173 tion or case law is less restrictive than the requirements of the form, will nevertheless have substantial protection against abuse of the acceleration process.”
Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law § 7.7, at 551 (Hornbook Series 4th ed.2001) (emphasis added; footnotes omitted). See 1 Jesse P. Evans III, Alabama Property Rights and Remedies § 34.5[a] (4th ed. 2010) (“A party may contractually undertake or obligate him or herself to provide pre-foreclosure notice. Nothing prevents a party from freely engaging in a contract that would require some form of notice to the mortgagor ... as a condition precedent to the exercise of the power of sale in the mortgage. Failure to give notice where there is such a contractual obligation amounts to a failure of a condition precedent or an estoppel, thereby forming a basis for barring exercise of the power .... ” (footnote omitted)). See also Dewberry v. Bank of Standing Rock, 227 Ala. 484, 492, 150 So. 463, 469 (1933) (“[A] sale under the power [of sale] in a mortgage or trust deed must be conducted in strict compliance with the terms of the power.”); Bank of New Brockton v. Dunnavant, 204 Ala. 636, 638, 87 So. 105, 107 (1920) (“ ‘In a court of law a power of sale is merely part of a legal contract to be executed according to its terms.’ ” (quoting Harmon v. Dothan Nat’l Bank, 186 Ala. 360, 369, 64 So. 621, 624 (1914))); Fairfax Cnty. Redev. & Hous. Auth. v. Riekse, 281 Va. 441, 446, 707 S.E.2d 826, 829 (2011) (“[T]he powers of the person foreclosing under a mortgage ... are limited and defined by the instrument under which he acts, and he has only such authority as is thus expressly conferred upon him, together with incidental and implied powers that are necessarily included therein.... Accordingly, the ... mortgagee must see that in all material matters he keeps within his powers, and must execute the trust in strict compliance therewith.”).
The “Fannie Mae/Freddie Mac Uniform Instrument” mortgage form in this case contained the species of provisions referenced in the excerpt from Real Estate Finance Law quoted above. Specifically, paragraph 22 of the form required the bank to give the Jacksons a notice— before acceleration — that it was considering an acceleration, upon the failure of certain conditions, in “not less than 30 days” following the date of the notice. In other words, the debt could not be accelerated until at least 30 days had passed and the Jacksons were still in default. Under the language of this mortgage, without proper notice of intent to accelerate, acceleration fails and, consequently, so does the foreclosure sale. See Sharpe v. Wells Fargo Home Mortg. (In re Sharpe), 425 B.R. 620, 643 (Bankr.N.D.Ala.2010).
The acceleration letter is just that — a notice that the debt had been accelerated, not a notice of intent to accelerate. The only option it contemplates is payment of the entire debt, an approach in direct contravention of paragraph 22. Thus, the Jacksons have provided substantial evidence that essential notice under the mortgage was not given, resulting in failure of the acceleration, and, consequently, failure of the foreclosure sale conducted on August 15, 2008. The trial court’s judgment, to the extent it summarily disposed of the breach-of-contract claim, was improper.

III. Conclusion

In conclusion, the Jacksons have presented no error in regard to the trial court’s judgment insofar as it disposed of the claim alleging negligent or wanton foreclosure. To that extent, the judgment is affirmed. However, insofar as it disposed of the breach-of-contract claim,[2] the *174 judgment is reversed, and the cause is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MALONE, C.J., and BOLIN, MURDOCK, and MAIN, JJ., concur.

. Throughout this litigation, the Jacksons have continued to reside on the property.

. Because the Jacksons have maintained that the judgment could be reversed on this *174 ground alone and have not explained how a reversal on any other ground would materially alter the case, we decline to address other grounds for reversal asserted in their briefs.