[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14690
_____

D.C. Docket No. 2:13-cv-02092-KOB


NELL C. DYSART,

Plaintiff - Appellant,

versus

TRUSTMARK NATIONAL BANK,
a corporation,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(March 30, 2018)


Before WILLIAM PRYOR, JILL PRYOR and CLEVENGER[*], Circuit Judges.

---

[*] Honorable Raymond C. Clevenger III, United States Circuit Judge for the Federal Circuit, sitting by designation.

PER CURIAM:

Plaintiff Nell Dysart, proceeding *pro se*, brought a state law breach of contract claim against Trustmark National Bank, alleging that it breached the terms of her mortgage when it accelerated her loan without providing her with the notice the mortgage required. The district court granted summary judgment to Trustmark. The court determined that Trustmark fulfilled its notice obligations under the mortgage as a matter of law, even though it failed to disclose some of the information required by the mortgage, because Dysart had actual knowledge of the omitted information.

This appeal requires us to consider whether, under Alabama law, a bank breaches the terms of a mortgage when it accelerates the loan—without disclosing to the borrower all the information that the mortgage requires the bank to disclose before acceleration—if the bank can show that the borrower was otherwise aware of the omitted information. We conclude that under these circumstances the bank has breached the terms of the mortgage agreement. Accordingly, we reverse the district court's grant of summary judgment to Trustmark on Dysart's breach of contract claim.

## I.    BACKGROUND

Dysart borrowed money from Trustmark secured by a mortgage on her home. The mortgage, which was based on a form agreement, obligated Dysart to

2

make monthly payments to Trustmark, pay taxes attributable to the property, and keep the property insured, among other things.  If Dysart defaulted on any of these obligations, the mortgage permitted Trustmark to accelerate the loan, foreclose on the property, and sell it in a foreclosure sale.

The mortgage dictated the notice that Trustmark had to provide to Dysart before it could accelerate the loan.[1]  The notice had to identify:

> (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the [loan] . . . .

Mortgage at ¶ 22 (Doc. 1-1).[2]  The mortgage also required Trustmark to "inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."  *Id.*

The mortgage provided that if Trustmark accelerated the loan, Dysart could cure the default and return to the original terms of the mortgage.  The original terms would be reinstated if Dysart paid all sums that were currently due under the mortgage, cured any default of other covenants or agreements, paid Trustmark's

---

[1] The mortgage established different notice requirements if Dysart was in default because she sold an interest or transferred her interest in the property without first obtaining Trustmark's consent.  Because Trustmark does not contend that it accelerated the loan on this basis, these requirements are not at issue.

[2] Citations to "Doc. #" refer to numbered docket entries in the district court record in this case.

expenses in enforcing the mortgage including its reasonable attorney's fees, and took any other action that Trustmark reasonably required.

The parties' dispute arose after Dysart defaulted on the mortgage by failing to maintain property insurance and pay the property taxes. In a series of several communications, Trustmark notified Dysart of the default, identified the actions that Dysart needed to take to cure the default,[3] and directed that the loan would be accelerated if Dysart failed to cure the default. But there is no evidence that Trustmark communicated to Dysart that she had a right to reinstatement after the loan was accelerated or to bring an action to assert the non-existence of a default or any other borrower's defense to acceleration and sale. When Dysart failed to cure the default, Trustmark accelerated the loan, foreclosed on the property, and sold it to a third party.

After the home was sold, Dysart, proceeding *pro se*, brought this lawsuit in state court, suing Trustmark for breach of contract.[4] Dysart alleged that the bank breached the terms of the mortgage by failing to give the required notice before accelerating the loan. Trustmark removed the lawsuit to federal district court on

---

[3] In the letter identifying the actions Dysart needed to take to cure the default regarding the property taxes, Trustmark gave Dysart seven days to say whether she would cure the default, but it never set a deadline for Dysart to cure the default before it accelerated the loan.

[4] Dysart previously sued Trustmark and others in three separate lawsuits alleging claims arising out of the foreclosure. Additionally, in this lawsuit Dysart originally brought other claims against the bank and its attorneys. The issues before us in this appeal are limited to her breach of contract claim; they do not implicate Dysart's earlier lawsuits or her other claims in this action.

4

the basis of diversity jurisdiction.  Trustmark then moved for summary judgment, arguing that it had not breached the contract because it had satisfied its disclosure obligations before accelerating the loan (1) by substantially complying with those obligations or (2) because Dysart was actually aware of the non-disclosed rights from prior dealings between the parties.  The district court granted Trustmark's summary judgment motion.  Although there was no evidence that Trustmark had informed Dysart of her rights to reinstatement or to bring a separate action to assert the non-existence of a default, the court found that Trustmark had fulfilled its obligations because Dysart had actual knowledge of these rights.  This is Dysart's appeal.

## II.    STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Likes v. DHL Express (USA), Inc.*, 787 F.3d 1096, 1098 (11th Cir. 2015) (internal quotation marks omitted).

5

### III.    LEGAL ANALYSIS

Dysart asserts that Trustmark breached the terms of the mortgage by failing to give proper notice before accelerating her loan.  She argues that before Trustmark accelerated the loan, it failed to notify her of the right to reinstatement or to bring a court action asserting the non-existence of a default; therefore, it breached the mortgage.  Trustmark admits that it failed to notify Dysart of these particular rights, but it contends that there was no breach because Trustmark substantially complied with the notice requirements and because Dysart was aware of the non-disclosed rights from the parties' prior dealings, when Dysart was in default previously.  We agree with Dysart that Trustmark breached the mortgage by failing to provide the requisite notice before accelerating the loan because Alabama law is clear that a bank must strictly comply with a mortgage's notice and disclosure requirements.[5]

The Alabama Supreme Court has recognized that if a lender fails to give notice that strictly complies with the requirements of the mortgage before accelerating the loan, the borrower has a breach of contract claim against the lender.  *Jackson v. Wells Fargo Bank, N.A.*, 90 So.3d 168 (Ala. 2012).  In *Jackson*, after borrowers fell behind on their mortgage payments, they received a notice from their loan servicer informing them that their loan had been accelerated and a

---

[5] The parties agree that in this diversity action Alabama law governs the breach of contract claim.

6

foreclosure sale was imminent. *Id.* at 170. After the foreclosure sale, the homeowners brought a breach of contract claim against the owner and servicer of the loan, seeking damages because the owner and servicer failed to give notice before accelerating the loan. *Id.* at 171. After the trial court granted summary judgment to the owner and servicer, the Alabama Supreme Court reversed, holding that the defendants breached the mortgage by failing to give the borrowers proper notice of their intent to accelerate the debt, as required under the terms of the mortgage. *Id.* at 173. The Court, quoting from earlier cases, explained that "strict compliance" with the mortgage's notice provisions was required. *Id.* at 173 (quoting *Dewberry v. Bank of Standing Rock*, 150 So. 463, 469 (Ala. 1933)).

In a recent decision, the Alabama Supreme Court, relying on *Jackson*, reiterated that a lender must strictly comply with a mortgage's notice provision before accelerating the loan. *See Turner*, 2017 WL 3821270. In *Turner*, after homeowners defaulted on their mortgage, their bank notified them that they were in default, that they had 30 days to cure the default before the bank accelerated the loan, and that they had the rights to reinstate the loan after acceleration and to assert in the foreclosure proceeding the non-existence of the default as a defense to the acceleration and foreclosure. *Id.* at *2. The bank then accelerated the loan, sold the property at a foreclosure sale, and filed an action to eject the homeowners from the property. *Id.* In the ejectment action, the homeowners asserted that the

7

bank had failed to give proper notice before acceleration by failing to disclose that the homeowners could bring a *separate* action to assert the non-existence of the default and that this failure to give notice rendered the foreclosure sale a nullity. *Id.* at \*3. The Alabama Supreme Court agreed, relying on *Jackson* and holding that substantial compliance was insufficient to satisfy the bank's notice obligation because Alabama law "requires strict compliance" before a bank may accelerate a loan. *Id.* Because the bank had not strictly complied with all of the mortgage's notice requirements, the Court concluded that the mortgage sale was void and the homeowners could not be ejected. *Id.* at \*6.

*Jackson* and *Turner* dictate that Trustmark was required to comply strictly with the mortgage's notice requirements, meaning it had to disclose to Dysart, among other things, that she had a right to reinstatement and to bring a court action asserting the non-existence of a default. Because Trustmark failed to do so, it breached the terms of the mortgage.

Trustmark argues that it was excused from strict compliance with the mortgage's notice requirement because Dysart had actual knowledge of the information that Trustmark failed to disclose. We acknowledge that neither *Jackson* nor *Turner* directly addressed whether proof that a borrower actually knew about her rights excuses a lender from fulfilling its notice obligations under a mortgage because this issue was not raised in either case. But it would be

8

inconsistent with the strict compliance requirement set forth in *Turner* and *Jackson* to conclude that because the borrower learned the information in some other way that the lender is relieved from its disclosure obligations such that it did not breach the agreement.  We are concerned that permitting a lender to prove that it did not breach the mortgage by relying on proof that the borrower was actually aware of the information that the lender failed to disclose would run counter to a mortgage's requirement that the lender give specific notice after a default occurs before accelerating the loan.  Allowing substitute proof of actual knowledge could, as a practical matter, eliminate a lender's responsibility to inform the borrower of her rights upon default because the mortgage itself notifies the borrower of these rights.

We also acknowledge Alabama case law holding that if a lender provides proof that it sent proper notice but the borrower denies ever receiving the notice, the court may consider whether the borrower had actual knowledge of the information that the lender was required to disclose.  *See Redman v. Fed. Home Mtg. Corp.*, 765 So.2d 630 (Ala. 1999).  In *Redman*, before accelerating the loan on a divorced couple's home, the lender fulfilled its disclosure obligations by sending, through certified mail, a notice of default to the home's address.  *Id.* at 634.  In an ejectment and wrongful foreclosure action, the ex-wife claimed that the bank failed to provide proper notice of the default because although she lived at the

9

home she never received the notice. *Id.* The Alabama Supreme Court, after finding that the bank had fulfilled its disclosure obligations, rejected the ex-wife's argument. Instead, the Court relied on the fact that the ex-wife had actual knowledge of the information that the bank was required to disclose, explaining that she could not "close[] [her] eyes to avoid 'discovery' of the truth that was reasonably apparent." *Id.* at 635.

The district court in this case treated *Redman* as permitting Trustmark to rely on evidence that Dysart received constructive notice in lieu of proving that it had strictly complied with the mortgage's notice requirements. But nothing in *Redman* directly addressed the question before us in this case—whether a lender breaches a mortgage when it fails to comply with a mortgage's pre-acceleration disclosure requirements if it can show that the borrower already knew the information that the lender was required to disclose. This issue necessarily was not decided in *Redman* because it was undisputed that the lender had sent proper notice before accelerating the loan.

We recognize that in a different context the Alabama Supreme Court has adopted a harmless error standard, holding that when a lender fails to provide the public with notice required under an Alabama statute before conducting a foreclosure sale, the borrower may rely on this error to invalidate the foreclosure sale only if the error prejudiced the borrower. *See Perry v. Fed. Nat'l Mortg.*

10

*Assoc.*, 100 So. 3d 1090 (Ala. Civ. App. 2012).  In *Perry*, after a homeowner defaulted on his mortgage, EverHome Mortgage Company published a notice in a local newspaper that it was the assignee of the mortgage and would be selling the property in a foreclosure sale.  *Id.* at 1092.  Alabama law requires that before conducting a foreclosure sale, a lender must give the public notice of the "time, place, and terms" of the sale through a notice published in a local newspaper.  Ala. Code § 35-10-13.  EverHome failed to comply with the statute's notice requirement because its description of the terms of the sale was inaccurate:  it was not the assignee of the mortgage at the time the notice was published.  Instead, EverHome was assigned the mortgage one week later.  *Id.* at 1098.  When the purchaser at the foreclosure sale brought an action to eject the homeowner, the homeowner argued that the foreclosure sale was null and void because EverHome's notice inaccurately identified EverHome as the assignee of the mortgage.  *See* Ala. Code § 35-10-13.  The Alabama Court of Civil Appeals rejected the homeowner's argument, holding that only errors in a required notice that prejudice the borrower will invalidate an otherwise valid foreclosure sale.  *Perry*, 100 So. 3d at 1099.

Although *Perry* did not require the lender to strictly comply with the statutory requirements governing notice to the public before a foreclosure sale, nothing in the opinion addressed whether this harmless error standard also applies

11

when a lender fails to comply with a *mortgage's* notice requirements before accelerating a loan.  We conclude that it would be inappropriate to extend the reasoning in *Perry* from the context of a lender failing to comply with statutory public disclosure requirements to that of a lender failing to comply with a mortgage's disclosure requirements because to do so would be inconsistent with the Alabama Supreme Court's *Turner* and *Jackson* decisions requiring strict compliance with mortgage disclosure obligations.  *See Turner*, 2017 WL 3821270, at *6; *Jackson*, 90 So.3d at 173.

Finally, we note that although Trustmark breached the terms of the mortgage by failing to give Dysart proper notice before accelerating the loan, if Dysart had independent knowledge of the information that Trustmark was required to disclose, she may have suffered no actual damages.  But this would not defeat Dysart's claim because even without actual damages Alabama law permits the recovery of nominal damages in breach of contract actions.  *See Knox Kershaw, Inc. v. Kershaw*, 552 So. 2d 126, 128 (Ala. 1989) ("It is well settled, however, that once a breach of contract has been established, as it was in this case, the nonbreaching party is entitled to nominal damages even if there was a failure of proof regarding actual damages.").

## IV.    CONCLUSION

For the reasons set forth above, we reverse the district court's grant of summary judgment to Trustmark.  We remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**