[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10786

_____

D.C. Docket No. 2:14-cv-02129-AKK


FEDERAL HOME LOAN MORTGAGE CORPORATION,

Plaintiff – Counter Defendant - Appellee,

WELLS FARGO BANK NATIONAL ASSOCIATION,

Counter Defendant,

versus


NORMAN D. ANCHRUM, JR.,
ANDREA S. ANCHRUM,

Defendants – Counter Claimants - Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 23, 2019)

Before ROSENBAUM, BRANCH, and HIGGINBOTHAM,[*] Circuit Judges.

PER CURIAM:

The Federal Home Loan Mortgage Corporation sued to eject Norman and Andrea Anchrum after foreclosing on their home. The Anchrums responded with several counterclaims against Freddie Mac and Wells Fargo Bank, N.A., the loan servicer, including that the foreclosure was void due to Wells Fargo's failure to comply with notice requirements. The district court granted Freddie Mac and Wells Fargo summary judgment, held a bench trial on damages, and awarded Freddie Mac $104,400 in lost rent damages in its ejectment action and $40,659.88 in attorney's fees. We affirm.

**I**

In 2003, Norman and Andrea Anchrum purchased a new home in Alabaster, Alabama. They made a down payment and took out a mortgage from Wells Fargo to cover the remaining balance. While both Anchrums signed the mortgage, only Norman Anchrum executed the promissory note.

The mortgage and note listed the property address as "552 N. Grande View Trail, Alabaster, Alabama 35007." In contrast, the warranty deed listed the mailing address for tax notice purposes as "552 N. Grande View Trail, Maylene, Alabama

---

[*] Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit, sitting by designation.

35114."[1] When closing the mortgage, Norman Anchrum executed a Property Insurance Disclosure Form that listed his "correct mailing address" as the Maylene address, along with a Subterranean Termite Contract listing the Maylene address.

The loan was eventually transferred and assigned to Freddie Mac, with Wells Fargo continuing to service the loan and stand as the document custodian. Wells Fargo's business records reflect that in 2005, Norman Anchrum called to say that he had not received a requested monthly statement. Around the same time, it received a return mail statement indicating that a letter to the Anchrums was sent to a faulty mailing address. The Anchrums' address was updated to the Maylene address. The Anchrums deny having spoken to Wells Fargo about the address or having updated their mailing address with Wells Fargo.

The Anchrums fell behind on their mortgage payments in 2010, and Wells Fargo mailed a notice of default to the Maylene address and zip code. The Anchrums cured their default prior to acceleration. When they again fell behind in April 2011, Wells Fargo mailed another notice of default to the Maylene address, and the Anchrums cured their default the next month. Norman Anchrum testified in his deposition that he did not remember receiving any notices of default from Wells Fargo and that the Anchrums had cured the defaults independently. Wells Fargo's customer service logs indicate that in May and June 2011, Norman

---

[1] Maylene is a community within southern Alabaster.

3

Anchrum had two telephone conversations with Wells Fargo representatives where he confirmed that his mailing address was "552 North Grande View Trail, Maylene, Alabama 35114."

Wells Fargo sent another notice of default to the Maylene address in August 2011. When the Anchrums failed to cure the default, Wells Fargo commenced foreclosure proceedings, notifying the Anchrums by letter to both the Alabaster and Maylene addresses and publishing three notices of foreclosure sale in a local newspaper. On November 29, 2011, Freddie Mac purchased the property at the foreclosure sale. Foreclosure counsel sent the Anchrums a demand for possession the next day.

Although the Anchrums ceased to live in the property and moved some of their belongings out, they left other personal belongings behind. Freddie Mac's real estate agent posted a notice on the property on January 9, 2012, that if they did not arrange to pick up their possessions within fifteen days, Freddie Mac would dispose of the items as deemed appropriate. The Anchrums did not retrieve their belongings, and Norman Anchrum continued to visit the property periodically to retrieve mail and cut the grass. Between the foreclosure sale and August 2014, however, Freddie Mac did not take steps to remove the Anchrums' possessions or to prepare the house for sale or rental. Its real estate agent testified that as a matter

4

of practice, he would not do so when personal property was visible through the windows of a house.

In August 2014, Freddie Mac filed an ejectment action in Alabama state court. The Anchrums responded by arguing that the foreclosure sale was void, and asserted several counterclaims against Freddie Mac and Wells Fargo.[2] Freddie Mac removed the case to the Northern District of Alabama.

On motion by Freddie Mac and Wells Fargo, the district court dismissed several of the Anchrums' counterclaims for failure to state a claim. It then granted Freddie Mac and Wells Fargo summary judgment on the remaining counterclaims and on Freddie Mac's ejectment claim. After a bench trial on damages, the district court found that Freddie Mac was entitled to the fair monthly market rental value of the property from December 2012 to October 2017—$1,800 per month, totaling $104,400.[3] The court also awarded Freddie Mac $40,659.88 in attorney's fees based on fee-shifting provisions in the mortgage and promissory note.

## II

We review the district court's grant of summary judgment de novo, "viewing all of the facts in the record in the light most favorable to the non-

---

[2] The Anchrums also asserted claims against United Guaranty Residential Insurance Company of North Carolina, which is no longer a party to this case after the district court dismissed all claims against it.

[3] The district court started the clock for damages in December 2012, as opposed to immediately after the 2011 foreclosure sale, to account for the fact that Freddie Mac would have needed to make repairs to the property before renting it.

movant."[4] Summary judgment is appropriate where there is "no genuine dispute of material fact such that the movant is entitled to judgment as a matter of law."[5] "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."[6]

As for the damages assessment arising from the bench trial, we review the district court's conclusions of law and application of law to the facts de novo, and evaluate its findings of fact for clear error.[7]

## III

The Anchrums make two arguments on appeal. First, they argue that Wells Fargo did not comply strictly with the terms and conditions of the promissory note and mortgage, voiding the foreclosure. Second, they argue that the district court erred in assessing attorney's fees and damages against Andrea Anchrum because she did not sign the promissory note.

## A

---

[4] *E.g.*, *Hillcrest Prop., LLP v. Pasco Cty.*, 915 F.3d 1292, 1297 (11th Cir. 2019). We review the district court's treatment of a magistrate judge's report and recommendation for abuse of discretion. *See, e.g.*, *Stephens v. Tolbert*, 471 F.3d 1173, 1175 (11th Cir. 2006) (per curiam). Here, where the relevant R&R addressed whether to grant Wells Fargo and Freddie Mac summary judgment and the Anchrums objected to the R&R on the same grounds they argue on appeal, this collapses into our de novo review of the summary judgment itself.

[5] *Id.* (internal quotation marks omitted); *see* Fed. R. Civ. P. 56(a).

[6] *E.g.*, *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

[7] *See, e.g.*, *U.S. Commodity Futures Trading Comm'n v. S. Trust Metals, Inc.*, 894 F.3d 1313, 1322 (11th Cir. 2018).

The Anchrums first argue that the foreclosure was void because Wells Fargo failed to comply strictly with a requirement that it send all notices to the "property address" listed on the mortgage and promissory note. It is settled that under Alabama law, anything less than strict compliance with a mortgage's notice requirements can void a foreclosure.[8] But we are not persuaded that Wells Fargo failed to comply strictly with the mortgage and promissory note when it sent the Anchrums the required notice of default and intent to accelerate.

**1**

Paragraph 22 of the Anchrums' mortgage provided for an acceleration notice that "shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by [the mortgage and sale of the property]." Paragraph 6(C) of the promissory note similarly provided that if the Anchrums were in default, "the Note Holder may send [them] a written notice telling [them] that if [they did] not pay the overdue amount by a certain date, the Note Holder may require [them] to pay immediately

---

[8] *See Ex parte Turner*, 254 So. 3d 207, 212–13 (Ala. 2017); *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 172–73 (Ala. 2012).

the full amount of Principal which has not been paid and all the interest that [they]

owe on that amount."[9]

Both documents established that Wells Fargo could comply with these

notice requirements by mailing the notice to the Anchrums' notice address by first-

class mail.[10] Both documents also specified that the "Property Address" would

serve as the default notice address unless the Anchrums designated a substitute

address. Specifically, Paragraph 15 of the mortgage established that:

> The notice address shall be the Property Address unless
> Borrower has designated a substitute notice address by
> notice to Lender. Borrower shall promptly notify Lender
> of Borrower's change of address. If Lender specifies a
> procedure for reporting Borrower's change of address,
> then Borrower shall only report a change of address
> through that specified procedure. There may be only one
> designated notice address under this Security Instrument
> at any one time.

Paragraph 7 of the promissory note more straightforwardly required that "any

notice that must be given [to the borrower] under this Note will be given by

delivering it or by mailing it by first class mail to . . . the Property Address above

---

[9] The report and recommendation adopted by the district judge interpreted this to mean that *if* Wells Fargo sent the Anchrums a notice of intent to accelerate, then it must have given them 30 days to cure the default—not that the foreclosure was void under the note if Wells Fargo failed to send the Anchrums proper notice of intent to accelerate. We need not address this in full, as it is not disputed that *at least* the mortgage required the mortgagee to send the Anchrums proper notice of default and intent to accelerate.

[10] Paragraph 15 of the mortgage provided that "[a]ny notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means." Paragraph 7 of the promissory note featured similar language.

or at a different address if [the borrower gives] the Note Holder a notice of [a] different address."

**2**

As we have explained, in 2005 Wells Fargo changed the Anchrums' mailing address from "552 N. Grande View Trail, Alabaster, Alabama 35007" to "552 N. Grande View Trail, Maylene, Alabama 35114." When it sent the Anchrums the notice of default in August 2011, that notice went to the Maylene address, not the Alabaster address. The Anchrums argue that the mortgage and promissory note established that all notices, including the required notices of default and intent to accelerate, must be sent to the "Property Address" listed on those documents—the Alabaster address and zip code.

The district court correctly concluded that based on the undisputed facts in the summary judgment record, notice of default and intent to accelerate was properly given. Although the August 2011 notice of default was not mailed to the property address identified in the mortgage and promissory note, Wells Fargo and Freddie Mac presented extensive—and essentially unrefuted[11]—evidence that

---

[11] In their opposition to Wells Fargo's and Freddie Mac's motion for summary judgment, the Anchrums stated, "Norman Anchrum did not provide the new address to Wells Fargo in writing. Norman Anchrum did not provide the new address to Wells Fargo orally." They cited nothing in the summary judgment record to support this assertion. Indeed, it appears that the closest the summary judgment record comes to supporting this proposition is in Norman Anchrum's deposition statement that he did not *recall* telling Wells Fargo to change the mailing address, which was not enough on this record to generate a genuine issue of material fact for summary judgment purposes.

Norman Anchrum had notified Wells Fargo that his mailing address was the Maylene address. The Maylene address was listed as the property or mailing address on multiple documents completed at closing; a statement mailed to the Alabaster address was returned undelivered in 2005 around the same time Norman Anchrum told Wells Fargo that he had not received the statement he requested; and a person identifying himself as Norman Anchrum reconfirmed the Maylene address as the correct mailing address via phone in 2011 and 2015. Norman Anchrum had also received bank statements at the Maylene address throughout 2011.

The Anchrums suggest that even if Norman Anchrum told Wells Fargo of a change in mailing address over the phone, he did not provide Wells Fargo with *written notice* as required by the mortgage's requirement that "[a]ll notices given by Borrower or Lender in connection with this Security Instrument must be in writing." There are several problems with this argument. First, it ignores the fact that Norman Anchrum signed documents at closing indicating that the mailing address for the property was in Maylene; Wells Fargo therefore had in its possession written documents, signed by the mortgagor, stating that the Anchrums' mailing address—and therefore their notice address for the purposes of first-class mail—was in Maylene. It also ignores that the Anchrums were affirmatively required by the mortgage to "promptly" update the lender about any change to their

10

notice address. Based on undisputed facts in the summary judgment record, Norman Anchrum treated the Maylene address as his mailing address in his dealings with Wells Fargo by 2011. While we do not rest on this point, it bears mention that if verbal confirmation of this change was insufficient, then the Anchrums were in breach of their own contractual obligation to notify Wells Fargo of any changes to the notice address.

Further, the Anchrums' argument warps Alabama caselaw holding that lenders must comply strictly with the terms of mortgages in order to foreclose. The Anchrums rely on *Jackson v. Wells Fargo Bank, N.A.* and *Ex parte Turner*, which concerned deficiencies in the notice provided *by the lenders to the borrowers*.[12] The Alabama Supreme Court established that in such cases, it will strictly apply a mortgage's notice provisions to ensure that borrowers get the notice to which they are entitled. *Jackson* and *Turner*—designed to protect borrowers from improper or deficient notices—do not translate well into this context, which involves a borrower's apparent failure to comply strictly with the terms of a mortgage and a lender's subsequent reliance on the borrower's statements. Again, the Anchrums do not argue that the notices sent to the Maylene address were otherwise deficient.

---

[12] *See Turner*, 254 So. 3d at 209–13 (holding that while notice was given, it was deficient because it failed to inform the mortgagors of their right to bring a court action challenging the foreclosure—as required by the terms of the mortgage); *Jackson*, 90 So. 3d at 172–73 (holding that a lender failed to comply strictly with the terms of a mortgage when it only provided notice that it was accelerating a loan, contravening the mortgage's requirement that it first provide notice of intent to accelerate).

11

Nor do they offer any reason to doubt that Norman Anchrum verbally told Wells Fargo representatives multiple times that his mailing address was the Maylene address. Instead, they argue that even though the mortgage and note expressly authorize the lender to send notices by first-class mail to a designated notice address other than the property address, Wells Fargo was not entitled to send the notices to the address Norman Anchrum verbally confirmed as his mailing address, because *the Anchrums* had failed to comply strictly with the requirement that they place all notices to Wells Fargo in writing. *Jackson* and *Turner* do not sustain this argument.

Wells Fargo did not fail to comply strictly with the notice requirements laid out in the mortgage and promissory note when it sent a notice of default and intent to accelerate to the Anchrums at the Maylene mailing address. We therefore affirm the district court's grant of summary judgment on this issue.

**B**

12

The Anchrums also argue that because Andrea Anchrum did not sign the promissory note, the district court erred in holding her liable for attorney's fees.[13] Both the promissory note and mortgage provided for the lender to receive attorney's fees as part of costs and expenses incurred in enforcing the loan agreement. The Anchrums argue that the trial court erred in assessing attorney's fees against Andrea Anchrum because "[t]he attorneys' fee [award] was based on the promissory note which was not signed by Andrea Anchrum." Although Wells Fargo argued for attorney's fees based on the fee-shifting provision in the promissory note, the district court explicitly stated that it was basing the fee award against the Anchrums on "the mortgage agreement and the contract in this case." While the Anchrums argue that Andrea Anchrum was not a party to the note, they make no effort to show that the mortgage's fee-shifting provision does not apply.[14] They have therefore not shown that the district court erred in assessing fees against Andrea Anchrum.

**C**

---

[13] The Anchrums also argue that Andrea Anchrum could not be liable for damages as a non-signatory to the note, which ignores the fact that Freddie Mac's entitlement to damages stemmed from the Anchrums' liability under Alabama's ejectment statute, *not* any contractual provisions within the promissory note or mortgage. *See* Ala. Code § 6–6–280.

[14] The Anchrums concede in their briefing that Andrea Anchrum executed the mortgage.

13

In addition to these two arguments, the Anchrums persistently gestured at a third point throughout their briefing and at oral argument: whether the district court erred in finding that they were liable for $104,400 in lost rent damages for Freddie Mac's ejectment claim. Alabama's ejectment statute allows "[a]n action for the recovery of land or the possession thereof" where the plaintiff "alleges that the plaintiff was possessed of the premises or has the legal title thereto . . . and that the defendant entered thereupon and unlawfully withholds and detains the same."[15] The district court found that although the Anchrums left the house within days of receiving the notice to vacate, they left personal possessions inside and Norman Anchrum continued to visit the property to mow the lawn and retrieve mail. The Anchrums do not appear to argue that the district court clearly erred in any factual findings. Rather, they at points suggest that because they had otherwise vacated the property, they could not be liable—as a legal matter—for damages in Freddie Mac's ejectment suit.[16]

It is unclear from the face of the ejectment statute whether the Anchrums' failure to remove their personal belongings from the property, and Norman Anchrum's continued returns to the property to mow the lawn and collect mail,

---

[15] Ala. Code § 6–6–280(b).

[16] It is not wholly clear whether the Anchrums challenge the grant of summary judgment on their *liability* in Freddie Mac's ejectment suit, or whether they instead challenge the district court's ultimate damages award. Our analysis here applies to both possibilities.

constituted an "unlawful[ ] withhold[ing] and [detention]" of the property, even where the Anchrums no longer resided at the property. Because the Anchrums raised this issue only obliquely both in the district court and on appeal, they have not presented any caselaw supporting their argument that they surrendered possession of the property. The Anchrums have not adequately briefed the issue and have therefore waived it.[17] We will not address it further.

## VI

We affirm the district court's grant of summary judgment to Wells Fargo and Freddie Mac, along with its award of damages.

**Affirmed**.

---

[17] *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).