"Thoughts much too deep for tears subdue the court When I assumpsit bring, and god-like waive the tort."[1]
Was the plaintiffs' action time barred? To answer this, we must determine whether the plaintiffs could proceed in assumpsit against an accounting firm, Touche Ross Co., that the plaintiffs employed to examine the balance sheet of Blumberg Sons, a retail department store, operated by the plaintiffs as a partnership, or whether the alleged wrong was tortious only. The suit was filed more than one year,[2]
but less than six years, after Touche Ross allegedly failed to disclose a material overstatement of accounts receivable, which should have been discovered by Touche Ross had it conducted its examination in accordance with generally accepted auditing standards. We hold that the plaintiffs can proceed in assumpsit, and that the action, therefore, was not time barred.
The agreement between the plaintiffs and Touche Ross is embodied in a June 3, 1974, letter from Touche Ross to the plaintiffs. The letter, in pertinent part, provided:
 "We are pleased to serve as independent accountants for Blumberg and Sons (A Partnership).
". . . .
 "The purpose of our engagement is to examine the Company's balance sheet as of June 1, 1974, and evaluate the fairness of presentation of the balance sheet in conformity with generally accepted accounting principles applied on a basis consistent with that of the preceding period.
 "Our examination will be conducted in accordance with generally accepted auditing standards which will include a review of the system of internal control and tests of transactions to the extent we believe necessary. Accordingly, it will not include a detailed audit of transactions to the extent which would be required if intended to disclose defalcations or other irregularities, although their discovery may result. *Page 924 
 "We direct your attention to the fact that management has the responsibility for the proper recording of transactions in the books of account, for the safeguarding of assets, and for the substantial accuracy of the financial statements. Such statements are the representations of management.
 "The objective of our examination is the expression of an unqualified opinion on the Company's balance sheet, dependent on the facts and circumstances at the date of our opinion. If our opinion will be other than unqualified, the reasons therefor will be fully disclosed."
The plaintiffs accepted these terms by signing and returning a copy of this letter. On July 9, 1974, Touche Ross sent the plaintiffs the following letter:
 "We have examined the balance sheet of Blumberg and Sons (a partnership) as of June 1, 1974. Our examination was made in accordance with generally accepted auditing standards, and accordingly included such tests of the accounting records and such other auditing procedures as we considered necessary in the circumstances.
 "In our opinion, the aforementioned balance sheet presents fairly the financial position of Blumberg and Sons (a partnership) at June 1, 1974, in accordance with generally accepted accounting principles applied on a basis consistent with that of the preceding year."
On February 15, 1980, plaintiffs filed suit in the Circuit Court of Houston County, alleging that the balance sheet report done by Touche Ross failed to disclose a material overstatement of accounts receivable that should have been detected by Touche Ross if it had conducted its "examination in accordance with generally accepted auditing standards" and alleging that as a result of this "breach of contract" plaintiffs sustained damages. Touche Ross filed a motion to dismiss, or in the alternative, for a change of venue because plaintiffs had characterized the action as being in contract only, and venue was not proper in Houston County because none of the individual defendants, who were dismissed as defendants, or partners of Touche Ross resided in Houston County. Section 6-3-2(a)(2), Alabama Code 1975. The parties stipulated for the case to be transferred to Jefferson County for a non-jury trial, and the trial court entered an order transferring the case. Touche Ross filed its answer, and the parties conducted discovery for the next several years. Touche Ross filed a motion for summary judgment, which asserted that the plaintiffs' claim sounded in tort, not in contract, and was barred by the one-year statute of limitations. This motion was granted. Plaintiffs appealed.
The parties do not argue the "law of the case" doctrine, and the case will not be decided on that doctrine, though it might have been applicable. Under the doctrine of the "law of the case," whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case. Alford v. Summerlin,423 So.2d 482 (Fla.Dist.Ct.App. 1982). If the cause of action was in tort, Touche Ross's motion for a change of venue was without merit. Under the doctrine of the law of the case, it could be argued that Touche Ross should be precluded from contending that the cause of action was in tort, after it had received the benefit and advantage of claiming that it was in contract, so long as the facts upon which the original decision was made continued to be the facts of the case. Once a party receives the advantage of an action being a contract action, it must suffer the disadvantage of it being a contract action under the doctrine of the law of the case. See Ferrier v. City of White Plains, 262 A.D. 94,28 N.Y.S.2d 218 (1941), appeal denied, 262 A.D. 962,30 N.Y.S.2d 399 (1941); Glenwood Hospital, Inc. v. LouisianaHosp. Service, Inc., 419 So.2d 1269 (La.App. 1982);Day v. Campbell-Grosjean Roofing Sheet MetalCorp., 260 La. 325, 256 So.2d 105 (1971); Mann v. R.Simpson Co., 286 N.Y. 450, 36 N.E.2d 658 (1941), which involved a stipulation, as did the case *Page 925 
at issue; and Cote v. Boise, 111 Vt. 343,16 A.2d 175 (1940).
If an accountant enters into an express agreement to perform his duties in accordance with generally accepted standards of his profession and does not, may the injured contracting party sue for breach of contract? That is the issue before us.
Because we have found no Alabama cases discussing a client's remedies for negligent performance of an accounting services contract, we have examined secondary sources and the cases of other jurisdictions.
Our examination of treatises, law review articles, and other secondary sources dealing specifically with the liability of accountants to their clients reveals near universal agreement with the proposition that such liability may arise in either tort or contract for the negligent performance of an accounting service. See Restatement(Second) of Torts § 552 comment g (1977); Annot.,Accountant's Malpractice Liability to Client, 92 A.L.R.3d 396, 404-05 (1979); D. Causey, Duties Liabilities of Public Accountants 61-65 (1979); R. Gormely, The Law of Accountants Auditors ¶ 5.01[1], at pp. 5-1 through 5-5 (1981); Hawkins,Professional Negligence Liability of PublicAccountants, 12 Van.L.Rev. 797, 797-98, 800 (1959). The language used in most of these authorities is quite broad, and the implication is that there is little controversy in the law on this point. See, e.g., R. Gormely,supra; Hawkins, supra, at 800. But see D. Causey, supra, at 62 (noting disagreements in the courts as to the proper cause of action, but arguing that the plaintiff probably should be given the benefit of the most advantageous remedy).
Although these authorities often do not discuss in great detail the reasons for the availability of both remedies, there appears to be a general recognition that the tort duty to exercise reasonable professional care can overlap in some degree with a contractual obligation to do the same. Consequently, these authorities take the view that the plaintiff may often avail himself of either remedy in cases of defective performance.
The law of several jurisdictions is summarized in Annot.,Accountant's Malpractice Liability to Client, 92 A.L.R.3d 396, 403-05 (1979); and Annot., Application ofStatute of Limitations to Damage Actions Against PublicAccountants for Negligence in Performance of ProfessionalServices, 26 A.L.R.3d 1438 (1969).
In City of East Grand Forks v. Steele, 121 Minn. 296,141 N.W. 181 (1913), the court held that a complaint stated a cause of action for breach of contract, and not in tort, where it alleged that accountants employed to perform an audit negligently failed to discover an employee's defalcations.
In Dantzler Lumber Export Co. v. Columbia CasualtyCo., 115 Fla. 541, 156 So. 116 (1934), the court recognized that the client's cause of action could be based on either breach of contract or tort.
In the following cases the cause of action was held to be in tort and not for breach of contract: Sato v. VanDenburgh, 123 Ariz. 225, 599 P.2d 181 (1979); Brueckv. Krings, 230 Kan. 466, 638 P.2d 904 (1982).
Touche Ross cites Carr v. Lipshie, 8 A.D.2d 330,187 N.Y.S.2d 564 (1959), aff'd, 9 N.Y.2d 983,218 N.Y.S.2d 62, 176 N.E.2d 512 (1961), as a case substantially similar to the case at issue; and, it is. Carr claimed that the accounting firm it employed to do an audit failed to discover allegedly false bookkeeping entries. The defendant argued that the action was barred by the statute of limitations for negligence actions, while Carr characterized the defendant's conduct as a breach of contract. Touche Ross cites Adler Topal, P.C. v. Exclusive EnvelopeCorp., 84 A.D.2d 365, 446 N.Y.S.2d 337 (1982), as proof of Carr's continued vitality. We find precedent from New York persuasive in a case of this nature; however, the reasoning in Carr has been repudiated by the New York Court of Appeals, and Adler Topal has been expressly disavowed.
New York's highest court began to show its dissatisfaction with the "tortious remedy only" rule in certain contractual contexts *Page 926 
in Paver Wildfoerster v. Catholic High SchoolAss'n, 38 N.Y.2d 669, 382 N.Y.S.2d 22, 345 N.E.2d 565
(1976). In that case, Chief Judge Breitel confronted the issue of whether an arbitration proceeding against a firm of architects was barred by the applicable statute of limitations. In New York, arbitration proceedings are subject to a limitations statute that bars an arbitration claim if that claim would also be barred in a court of law. The claim at issue purported to assert an action in contract against the architects for their failure to exercise due care in the design and supervision of the construction of a school building. The architects argued that such a claim, though formally stated in contract, was "in essence" tortious, under authorities analogous to Carr, supra, and that it consequently was barred by the tort statute of limitations.
Chief Judge Breitel rejected this reasoning and held that the contract statute of limitations would apply in the arbitration proceeding, rather than the tort statute. One ground for his holding was that the Carr rule, a largely technical decision advanced for the guidance oflaw courts, should not be extended to the inherently more flexible forum of arbitration. Retaining flexibility in arbitration, however, was not Chief Judge Breitel's only concern:
 "To be sure, it has been said that the law in this State, in applying the Statute of Limitations, will look to the 'reality' or the 'essence' of the action and not its form. . . . Thus, when the wrong complained of, although arising from a breach of a contractual obligation, essentially consists of a failure to use due care in the performance of that obligation, it has been held that the 'negligence' or 'malpractice', and not the 'contract', Statute of Limitations applies. . . .
 "Significantly, many of these cases were decided in the context of causes of action to recover damages for direct or underlying personal injury. . . . In personal injury cases, it has been said with verbal plausibility that since the 'gravamen' of the action is the misconduct of the defendant, the action sounds 'essentially' in tort. On the other hand, however, when the action is one for damages to property or pecuniary interests only, where there is a contractual agreement between the parties, the general tendency has been to allow the plaintiff to elect to sue in contract or tort, as he sees fit . . ."
Paver Wildfoerster, 38 N.Y.2d, at 674-75,382 N YS.2d, at 24-25, 345 N.E.2d, at 568.
Hence, Chief Judge Breitel introduced as an additional rationale in support of his holding the idea that there is a distinction between personal injury actions and those actions involving pecuniary or property damage, at least where there is a contractual relationship between the parties, citing what is now W. Keeton, D. Dobbs, R. Keeton D. Owen,Prosser Keeton on Torts § 92, at 666-67 (5th ed. 1984), as authority.
The Paver holding has not been restricted to arbitration. In Sears, Roebuck Co. v. Enco Assoc.,43 N.Y.2d 389, 401 N.Y.S.2d 767, 372 N.E.2d 555 (1977), the rule of Paver was extended to actions at law so that "when damage to property or pecuniary interests is involved, the [contract] statute [of limitations] governs regardless of how the theory of liability is described, as long as the asserted liability 'had its genesis in the contractual relationship of the parties.' " Baratta v.Kozlowski, 94 A.D.2d 454, 461, 464 N.Y.S.2d 803, 808
(1983) (quoting Sears, Roebuck, supra).[3]
Moreover, in a recent memorandum opinion, the Court of Appeals has also made it clear that the Sears,Roebuck and Paver rationale applies to accountant malpractice. In Video Corp. of America v.Frederick Flatto Assoc., Inc., 58 N.Y.2d 1026,462 N.Y.S.2d 439, 448 N.E.2d 1350 (1983), the Court of Appeals restated its rule under Sears, Roebuck andPaver and expressly adopted the dissenting opinion of a judge *Page 927 
from the lower court who had argued that the rule ofPaver applied broadly to all actions having their genesis in contract where the damages claimed arose from injury to pecuniary or property interests. The Court of Appeals also took the opportunity to expressly disavow two other cases, neither of which was before it, cases which had restrictively applied the Paver rule. Among them wasAdler Topal, P.C. v. Exclusive Envelope Corp.,supra, which had held, on the basis of Carr,supra, that Sears, Roebuck did not apply to accountant malpractice actions. As Video Corp.
demonstrates, Carr has been repudiated; and we are certain that New York would now allow a contract action against an accountant for the accountant's failure to exercise due care.
Although we need not adopt the precise rule of New York to resolve this case, we find persuasive the decision of this preeminent financial jurisdiction to view accountant liability as arising in either tort or contract.
Touche Ross contracted with the plaintiffs and expressly promised to use generally accepted accounting principles and generally accepted auditing standards. The offer and the acceptance were in writing. In Alabama, one who contracts with another and expressly promises to use due care is undoubtedly liable in both tort and contract when his negligence results in injury to the other party. He is liable in contract for breaching an express promise to use care. He is liable in tort for violating the duty imposed by law on all people not to injure others by negligent conduct. The injured party has the choice of remedies when a contract contains an express promise to use due care. Eidson v.Johns-Ridout's Chapels, Inc., 508 So.2d 697, 701 (Ala. 1987); Comment, Contractual Recovery for NegligentInjury, 29 Ala.L.Rev. 517, 524-25 (1978).[4]
Plaintiffs' action for breach of contract was not time barred, and the trial court erred in granting summary judgment in favor of Touche Ross.
REVERSED AND REMANDED.
MADDOX, JONES, SHORES and STEAGALL, JJ., concur.
TORBERT, C.J., concurs in result.
BEATTY and ADAMS, JJ., dissent.
ALMON, J., not sitting.
[1] Adolphus, The Circuiteers, an Eclogue, 1 L.Q. Rev. 232 (1885).
[2] Alabama Code 1975, § 6-2-39, the one-year tort statute of limitations, was repealed effective January 9, 1985. See Act 85-39, Ala. Acts 1984-85. Those actions governed by that one-year statute were transferred by Act 85-39 to Code 1975, § 6-2-38, the two-year statute.
[3] Baratta presents a good summary of the development of New York law on these points. In addition, there is a law review note discussing these developments. See Farrell, 1983 Survey of New York Law — CivilPractice, 35 Syracuse L.Rev. 60-64 (1984).
[4] Because this case involves a contract in which the promise to exercise due care is an express term, we do not reach the question of whether an implied term to exercise due care would also give rise to an action in contract. But see, e.g., Garig v. East End MemorialHosp., 279 Ala. 118, 182 So.2d 852 (1966) (impliedcontractual duty to exercise due care will not be imposed by law).