DONALDSON, Judge.
Emmett Jackson and Debra Jackson appeal from a summary judgment entered by the Mobile Circuit Court (“the trial court”) in favor of Wells Fargo Home Mortgage, N.A., and U.S. Bank, National Association, as trustee for Structured Asset Securities Corporation Trust 2005-WF-8 (“the trustee”). We affirm the trial court’s summary judgment, which is premised on its holding that the foreclosure sale of the Jacksons’ property was proper.

Facts and Procedural History

The Jacksons’ action against Wells Fargo Home Mortgage and the trustee is before an appellate court for the second time. See Jackson v. Wells Fargo Bank, N.A., 90 So.3d 168 (Ala.2012).[1] In Jackson, our supreme court provided the following background information regarding the action:
“On February 11, 2005, the Jacksons refinanced an existing loan on their home in Mobile. In so doing, they gave a mortgage on the property, which was subsequently assigned to the bank. Although the mortgage was, in turn, assigned to the trustee, the bank continued to function as the ‘servicer’ of the loan.
[[Image here]]
“By October 2007, the Jacksons were in arrears -on their mortgage payments. In that month, the Jacksons and the bank entered into a ‘special forebearance agreement’ (‘the first forebearance’), whereby the Jacksons were to make three monthly payments of $389.32, beginning on November 29, 2007, and a fourth payment of $1,597 on February 29, 2008. A dispute arose over the Jacksons’ compliance with the first forebearance, and, on January 25, 2008, the bank offered the Jacksons another ‘special forebearance agreement,’ whereby they were to make three monthly payments of $370.95, beginning on February 22, 2008, and a fourth payment of $2,405.86 on May 22, 2008. While the Jacksons and the bank were engaged in negotiations for further fore-bearance, the Jacksons did not make the payment of $2,405.86 that was due in May.”
90 So.3d at 169-70.
On May 23, 2008, Wells Fargo Home Mortgage, acting as the servicer of the Jacksons’ loan on behalf of the trustee, sent the Jacksons a proposed agreement to modify the terms of their mortgage and note (“the loan-modification agreement”). (Wells Fargo Home Mortgage and the trustee are hereinafter referred to collectively as “the bank.”) Under the terms of the loan-modification, agreement, the maturity date of the Jacksons’ loan was extended to February 1, 2035, and the first payment under the agreement, in the amount of $345.43, was due on August 1, 2009. The Jacksons had the opportunity to cure their mortgage default by entering the loan-modification agreement. The packet containing the loan-modification agreement included a letter that provided, in pertinent part:
“This letter will confirm our formal approval of a loan modification/restructure of your mortgage loan. To facilitate this transaction, it was mutually agreed that a contribution of $1,348.58 would be required, which will be applied toward the accrued delinquency.
*61 “Please sign the enclosed loan modification agreement and return it, along with any payment(s) and/or contribution due as reflected in the terms of this-letter.
[[Image here]]
“This proposal is valid for five (5) days from the date of this letter. Therefore, it is imperative the modification agreement(s) be executed and returned in the enclosed, self-addressed, prepaid, express mail envelope. Please note, although approved, the normal servicing process will continue uninterrupted, unless advised otherwise.”
The Jacksons signed the proposed loan-modification- agreement and mailed it to the bank, but they did not pay the $1,348.58 contribution referenced in the letter (“the contribution payment”) or make any other payment.
Around the time the loan-modification agreement was being negotiated, the bank referred the Jacksons’ loan to a debt-collection representative to try to seek a resolution regarding the Jacksons’ default and, if necessary, to handle foreclosure matters. On June 11, 2008, the debt-collection representative sent the .following letter by certified mail to the Jacksons informing them that their loan was in default and that they had until July 16, 2008, to cure the default and to prevent acceleration of their note:
“By virtue of default in the terms of your Note and Mortgage ... we hereby notify you that there has been a breach in the terms of the note and mortgage.
“In order to cure this breach, you must- send to our office, in certified funds, the sum of $4,248.85, including lawful charges, which total shall be the amount necessary to reinstate this loan through July 16, 2008. Payment, in certified funds, must be received in our office on or before July 16, 2008. In the event we do not receive the reinstatement funds by July 16, 2008 it is the intention of [the trustee] to accelerate the total amount due under the Note and Mortgage and to proceed with foreclosure as provided in said Mortgage.
“This is to further advise you that you have the right to reinstate after the acceleration of the Note and the right to bring a court action to assert the nonexistence of a default or any other defense you have as to the acceleration and sale.
“If the breach is not cured on or before July 16, 2008, [the trustee] may, at its option, declare all of the sums secured by the Mortgage to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law....”
The return receipt indicates that “Valencia, J.” signed for the letter on June 18, 2008. An affidavit from an employee of the debt-collection representative states that it received a telephone call from a person identifying herself as “Mrs. Jackson” on June 13, 2008. The Jacksons allege that they did not receive the letter, and they dispute the bank’s assertion that it was sent.
The Jacksons indisputably received a letter from the bank dated June 30, 2008, denying the proposed loan modification because the bank had not received “the executed modification agreements needed to complete the transaction.” In her affidavit, Debra Jackson states that, after receiving the June 30, 2008, letter, she contacted a bank representative who informed her “that, for whatever reason, their system was not showing the modification as being received,” that the Jacksons would have to restart the loan-modification process in order to keep their house, and that the Jacksons “should hold off sending any *62 payments, including the contribution payment.” In a deposition, a bank representative affirmed that the June 30, 2008, letter incorrectly stated that the bank had not received the signed loan-modification agreement, but she could not confirm whether Debra Jackson was told not to make the contribution payment, as Debra asserted in her affidavit. The bank representative stated in her deposition testimony that the parties understood that the Jacksons “were given up to [July 15, 2008,] to make the [contribution] payment.” Nevertheless, the Jacksons did not remit the contribution payment by July 15.
Meanwhile, the debt-collection representative did not receive the amount necessary to cure the Jacksons’ default and to prevent acceleration of the note by the July 16 deadline, as specified in the June 11, 2008, letter. On July 21, 2008, the debt-collection representative sent the Jacksons notice that their loan had been accelerated to maturity and that foreclosure proceedings had begun. The ongoing negotiations between the bank and the Jacksons failed to produce an agreement that would cure their default. On August 15, 2008, a foreclosure sale was conducted, and a foreclosure deed to the property was issued to K-Quad, LLC.
On September 30, 2008, the Jacksons filed the underlying action against Wells Fargo Home Mortgage, the trustee, and K-Quad. The Jacksons essentially alleged negligent or wanton foreclosure and breach of contract, seeking damages on those claims. Jackson, 90 So.3d at 170. The complaint also stated claims for declaratory and injunctive relief, seeking to quiet title to the property in the Jacksons. K-Quad was later dismissed from the action. As noted in Jackson:
“The bank and the trustee jointly moved for a summary judgment, contending that the Jacksons ‘lack any valid basis to contest the foreclosure sale.’ In response to that motion, the Jacksons argued that they were not in default as of the date of the sale and that, in any case, the bank had not given notice of its intent to accelerate as required by paragraph 22 of the mortgage. Subsequently, the bank and the trustee filed an amended summary-judgment motion, contending that the Jacksons had ‘failed to establish that they are entitled to an award of compensatory damages.’ Regarding the notice issue raised by the Jacksons, the bank and the trustee merely stated: ‘An acceleration letter dated July 21, 2008, notified [the Jack-sons] of the total amount of their outstanding debt to [the bank] and the scheduled date of the foreclosure sale.’ (Emphasis added.) The bank and trustee supplemented their original summary-judgment filings with a copy of the acceleration letter. The trial court entered a summary judgment in favor of the bank and the trustee, and the Jack-sons appealed.”
90 So.3d at 170-71.
In Jackson, our supreme court affirmed the summary judgment in favor of the bank on the claim alleging negligent or wanton foreclosure, but it reversed the summary judgment on the claim alleging a breach of contract. The supreme court construed the Jacksons’ mortgage agreement to require two notices before a foreclosure sale could occur — a notice that a debt acceleration could occur and a notice that a debt acceleration had occurred. Paragraph 22 of the mortgage agreement provides, in pertinent part:
“22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower’s breach of any covenant or agreement in this Security Instrument .... The notice shall specify: (a) the default; (b) the *63 action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law....”
Because the only “notice” in the record in Jackson was the July 21, 2008, letter from the debt-collection representative informing the Jacksons that the debt had been accelerated, the supreme court concluded:
“[T]he Jacksons have provided substantial evidence that essential notice under the mortgage was not given, resulting in failure of the acceleration, and, consequently, failure of the foreclosure sale conducted on August 15, 2008. The trial court’s judgment, to the extent it summarily disposed of the breach-of-contract claim, was improper.”
90 So.3d at 173.
The supreme court remanded the action to the trial court for further proceedings. 90 So.3d at 174. On remand, the bank again moved for a summary judgment on the Jacksons’ breach-of-contract claim. In support of that motion, the bank submitted the June 11, 2008, letter from the debt-collection representative, purporting to notify the Jacksons of the bank’s intent to accelerate the loan. The trial court considered the June 11, 2008, letter, which was not part of the record on appeal in Jackson, in addition to the July 21, 2008, letter notifying the Jacksons of the loan acceleration. The court entered a summary judgment in favor of the bank finding that the Jacksons had been properly notified of the loan acceleration, as required under the mortgage agreement, and that the parties did not have a binding agreement that cured the Jacksons’ default. After the trial court denied the Jacksons’ motion to alter, amend, or vacate the judgment, the Jacksons timely appealed to this court.[2]

Standard of Review

“[An appellate court’s] review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the non-movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to *64 produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); Ala.Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).

Discussion

The Jacksons contend that the supreme court in 'Jackson held that the bank did not provide proper notification of the loan acceleration, and that holding of the previous appeal operates as the “law of the case,” thus precluding the entry of a summary judgment against them on their breach-of-contract claim.
“ ‘ “ ‘Under the doctrine of the “law of the case,” whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.’ Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987). See also Titan Indem. Co. v. Riley, 679 So.2d 701 (Ala.1996).” ’ ”
Poole v. Prince, 61 So.3d 258, 273 (Ala. 2010) (quoting Bagley ex rel. Bagley v. Creekside Motors, Inc., 913 So.2d 441, 445 (Ala.2005), quoting in turn Southern United Fire Ins. Co. v. Purma, 792 So.2d 1092, 1094 (Ala.2001)) (emphasis added). On remand, a trial court must comply with the appellate court’s mandate on issues the appellate court has decided. Poole, 61 So.3d at 273.
“ ‘ “ ‘If, however, an óbservation by the appellate court concerning an issue is premised on a particular set of facts, and the nature of the remand is such that it is permissible and appropriate to consider additional facts relevant to the issue, the law-of-the-case doctrine is inapplicable. Quimby v. Memorial Parks, Inc., 835 So.2d 134 (Ala.2002); United States Fid. & Guar. Co. v. Baldwin County Home Builders Ass’n, 823 So.2d 637 (Ala.2001); Blumberg v. Touche Ross & Co., 514 So.2d 922 (Ala.1987); Gonzalez v. Blue Cross & Blue Shield of Alabama, 760 So.2d 878 (Ala.Civ.App.2000).’ ” ’ ”
Poole, 61 So.3d at 273 (quoting Bagley, 913 So.2d at 445, quoting in turn Lyons v. Walker Reg’l Med. Ctr., Inc., 868 So.2d 1071, 1077 (Ala.2003)).
In Jackson, our supreme court held that “the Jacksons have provided substantial evidence that essential notice under the mortgage was not given.” 90 So.3d at Í73. As the court explained, “[i]t is well settled that ‘[t]o defeat a properly supported summary judgment motion, the nonmoving party must present “substantial evidence” creating a genuine issue of material fact.’ ” Id. at 171. (quoting Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala.1994)). The supreme court therefore decided that a genuine issue of material fact existed regarding whether the bank had properly notified the Jacksons of the loan accelera tion. See Bagley, 913 So.2d at 446. The court did not definitively decide whether the bank had properly notified the Jack-sons under the mortgage agreement. See id. The cause was remanded for further proceedings because the bank, the party moving for summary judgment, had failed to establish, for purposes of the summary-judgment motion under review, that no genuine issues of material fact existed. Jackson, 90 So.3d at 174. Nothing in the supreme court’s opinion precluded-a subsequent summary-judgment motion from being filed and considered on remand. Therefore, the law-of-the-case doctrine did not preclude the trial court from considering additional facts on remand when the *65 second summary-judgment motion was filed.
Citing J.K.L.B. Farms, LLC v. Phillips, 975 So.2d 1001 (Ala.Civ.App.2007), the Jacksons argue that the law-of-the-case doctrine applies and that the bank waived the argument concerning the June 11, 2008, notice letter because it failed to raise that argument before the trial court in its first motion for a summary judgment or during the prior appeal. In J.KL.B. Farms, the trial court had reached a final judgment on a boundary-line dispute that entailed the factual determination that J.K.L.B. Farms owned a certain mobile home. J.K.L.B. Farms appealed the judgment but did not raise the ownership of the mobile home as an issue in its arguments. Subsequently, J.K.L.B. Farms challenged a contempt order, asserting, for the first time in the case, that it did not own the mobile home. On appeal for the second time, this court held that the law-of-the-case doctrine precluded J.K.L.B. Farms from asserting nonownership of a mobile home and that J.K.L.B. Farms had waived any argument based on the nonownership of the mobile home.
In the present case, the supreme court concluded that the July 21, 2008, letter was only a notification of aecelera-' tion and “not a notice of intent to accelerate.” Jackson, 90 So.3d at 173. That determination still applies to this case and remains undisturbed. On. remand, the bank did not argue that the July 21, 2008, letter was both a notice of intent to accelerate and a notice of acceleration: Rather, it supplied additional facts by submitting the June 11, 2008, letter with its second motion for a summary judgment. In J.K.L.B. Farms, the fact of J.K.L.B. Farms’ ownership of the mobile home had been determined in a final judgment and was not challenged on appeal. In contrast, on remand in this case an issue of material fact existed as to whether notice had been properly provided to the Jacksons under the mortgage agreement. “ ‘ “In the words of Justice Holmes, the doctrine of the law of the case ‘merely expresses the practice of courts generally to refuse to reopen what has been decided....’ Messinger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912) (emphasis added [in Bagley ex rel. Bagley v. Creek-side Motors, Inc., 913 So.2d 441, 445 (Ala.2005)]).’” G.E.A. v. D.B.A, 920 So.2d 1110, 1115 (Ala.Civ.App.2005).” J.K.L.B. Farms, 975 So.2d at 1009. Because the notification issue was still unresolved upon remand to the trial court, the trial court was not bound by the law-of-the-case doctrine from considering additional facts regarding that issue.
In J.KL.B. Farms, the trial court’s final judgment had resolved all the material issues of fact, and, by not raising the arguments on appeal of that judgment, J.K.L.B. Farms failed to preserve the ownership of the mobile home as an issue. Consequently, J.K.L.B. Farms had waived the arguments based on that issue in its appeal of the contempt order. The procedural posture of this case is quite different. Unlike the ownership of the mobile home in J.K.L.B. Farms, the notification issue in this case remained an unresolved issue on remand to the trial court and, thus, subject to resolution on a motion for a summary judgment. Moreover, the bank did not fail to preserve the issue. It argued in its motion for summary judgment on remand and in its appellate brief to this court that the Jacksons were properly notified under the mortgage agreement. That issue, therefore, is properly before this court..
On the notification issue, the Jack-sons contend that the bank breached the mortgage agreement by failing to provide proper notice before the foreclosure sale. Without proper notice of the acceleration *66 of the loan, “acceleration fails and, consequently, so does the foreclosure sale.” Jackson, 90 So.3d at 173. The mortgage agreement required the bank to provide both a notice of intent to accelerate the loan and a notice of acceleration. Id. at 172-73. The letter sent to the Jacksons on July 21, 2008, is indisputably a notice of acceleration, or the second required notice under the mortgage agreement, and the Jacksons do not contest the fact that they were properly notified of the acceleration of their loan. The Jacksons argue instead that the bank failed to provide them with notice of intent to accelerate the loan, or the first notice required under the mortgage agreement.
The mortgage agreement specifies what constitutes notice:
“15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower’s notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender....”
(Bold typeface in original.) The debt-collection representative stated that, on the behalf of the bank, it sent the June 11, 2008, letter to the Jacksons by certified mail at the address listed in the mortgage agreement and that it received a signed return-receipt green card, dated June 13, 2008, evidencing delivery. Such delivery was sufficient under the terms of the mortgage agreement to give notice to the Jack-sons. The June 11, 2008, letter states the bank’s intent to accelerate the Jacksons’ loan if the default was not cured by July 16, 2008, which was more than 30 days from the date the letter was sent. The Jacksons do not contest whether the content of the letter complied with the terms of the mortgage agreement regarding notification or whether notice was “deemed to have been given” based on the manner in which the notice was sent. Under these circumstances, the mere assertion that the Jacksons did not receive the letter does not establish a genuine issue of material fact regarding whether the June 11, 2008, letter was sent as required by the mortgage instrument. See Walker v. North American Sav. Bank, 142 So.3d 590 (Ala. Civ.App.2013) (borrower failed to show a genuine issue of material fact regarding whether required notices were sent); accord Coleman v. BAC Servicing, 104 So.3d 195, 205 (Ala.Civ.App.2012).
The Jacksons assert that testimony from a bank representative indicating that she did not have knowledge of the June 11, 2008, letter controverts the evidence indicating that the letter was sent. The record shows that, although she had access to information regarding the bank’s communications with the Jacksons, the bank representative did not have access to the computer system containing the debt-collection representative’s communications with the Jacksons. That particular bank representative’s lack of knowledge, thus, does not present a dispute as to the issue whether the debt-collection representative sent the June 11, 2008, letter.
The Jacksons next contend that, pursuant to the loan-modification agreement and the letter dated May 23, 2008, the parties had a binding agreement to modify the mortgage loan and, therefore, that that agreement cured any preexisting defaults, including the default referenced in the June 11, 2008, and July 21, 2008, *67 notification letters. The trial court, however, found that the parties did not enter into a binding agreement to modify the mortgage loan. The trial court determined that there was no impediment to the bank’s pursuing foreclosure because the Jacksons had failed to remit the contribution payment required to formalize the loan-modification agreement. A failure to perform a condition precedent to formation of a contract results in a nonbinding agreement. See, e.g., Reeves Cedarhurst Dev. Corp. v. First American Fed. Sav. & Loan Ass’n, 607 So.2d 180, 182 (Ala.1992). The Jacksons’ making the contribution payment was a condition precedent that was required to be performed before the loan-modification agreement became binding on the parties.
“‘Whether a provision in a contract is a condition precedent depends, not upon formal words, but upon the intent of the parties, to be deduced from the whole instrument.’ ” Bank of Brewton, Inc. v. International Fid. Ins. Co., 827 So.2d 747, 752 (Ala.2002) (quoting Fidelity & Cas. Co. of New York v. DeLoach, 280 Ala. 497, 502, 195 So.2d 789, 793 (1967), citing Floyd v. Pugh, 201 Ala. 29, 77 So. 323 (1917)). The May 23, 2008, letter clearly states that the loan-modification agreement was only a proposal and that action was required to be taken by the Jacksons before the loan-modification agreement became binding. The May 23 letter required the Jacksons to make the contribution payment in the amount of $1,348.58 before the loan-modification agreement would become effective. Because the Jacksons did not remit the contribution payment, the proposed loan-modification agreement did not bind the parties or cure the Jacksons’ default.
The Jacksons contend that the bank repudiated the loan-modification agreement on June 30, 2008, and that that repudiation excused the Jacksons from making the contribution payment. However, as noted above, the parties never formed a binding loan-modification agreement for the bank to repudiate.

Conclusion

In summary, the law-of-the-case doctrine did not preclude the trial court from considering additional facts on remand, and the Jacksons failed to present a genuine issue of material fact regarding whether the bank complied with the notice provisions of the mortgage agreement before conducting the foreclosure sale. Accordingly, we affirm the trial court’s summary judgment in favor of the bank on the Jack-sons’ breach-of-contract claim.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. In the record for this appeal, the judgment entered by the trial court names "Wells Fargo Home Mortgage, N.A.,” as a defendant. In the appellee’s brief, Wells Fargo Home Mortgage is identified as a division of Wells Fargo Bank, N.A., the entity identified as an appel-lee and defined as "the bank” in Jackson.

. Because the trial court has entered judgment in favor of the bank on the Jacksons’ claims alleging negligently or wanton foreclosure and breach of contract, the Jacksons’ claims seeking declaratory and injunctive relief were impliedly denied, and the trial court’s judgment is, therefore, final.